## WALBRIDGE *against* ARNOLD and another.

Where the declaration, in an action on a promissory note, alleged, that the defendants, in and by a certain writing or note, under *their hands*, by them *well executed*, promised, &c.; and the proof was, that one of the defendants having signed the note in his proper hand-writing, the other defendant, acting freely and voluntarily, made his mark, between his name, written by another, at the bottom of the note, and the word "mark"—thus, " *E. A's* ✕ mark ;" it was held, that there was no essential variance.

Nor did it make any difference, that in making such mark, the hand of the writer was guided by the hand of another person.

Where the defence, in an action on a promissory note, was, want of consideration; the plaintiff claimed, that a violent assault and battery had been committed upon him, by several persons, with whom the defendant *A* was confederate, and who were influenced by him to commit the assault, and that the note in question was understandingly given by *A*, on a settlement, and as a compromise of the damages claimed of him by the plaintiff; to substantiate this claim the plaintiff *offered testimony* to shew, that there had been a narration of the facts, stating all the circumstances, in the presence and hearing of *A*, by one of the confederates in the assault; to which narration *A* offered no contradiction or explanation; it was held, 1. that the testimony offered was admissible to establish the plaintiff's claim; 2. that the facts claimed by the plaintiff, shewed a sufficient consideration.

Where a further defence was, that when the note was given by *A*, he was blind, and could not read it; that he was then under arrest and held in custody, on a criminal prosecution; and that, in that condition, he was overcome by threats, and was not a free and voluntary agent in giving the note. In view of all the evidence upon the point, the court charged the jury, that the threats in question, in order to avoid the note, must have been such as would intimidate a man of ordinary firmness; adding, that if *A* had mind enough fairly and fully to comprehend the cause and object of the note, and the nature and extent of it; and if he acted as a free and voluntary agent

in executing it, it would be good,—otherwise, it would be absolutely void; after a verdict for the plaintiff, it was held, that the charge was unexceptionable.

Where a further defence to such action was, that the note was given under the pressure of a criminal prosecution, and to induce a suppression of it; which was denied, by the plaintiff, who claimed, that the pendency of the criminal process had no influence, and was not intended to have any, in procuring the note; and the court charged the jury, that if the note was given freely, to satisfy the plaintiff's private claim for damages, it was good; but void, if it was given, in whole or in part, to suppress an enquiry into the commission of an offence, or to prevent, in any measure, the administration of criminal justice; it was held, that the charge was not erroneous.

THIS was an action on a promissory note, alleging, that the defendants, in and by a certain writing or note, under their hand, by them well executed, dated the 16th day of *June*, 1849, promised the plaintiff to pay him, sixty days after said date, for value received, the sum of 200 dollars and 12 cents, with interest; with a profert of the note. To this were added the common counts.

The defendants pleaded the general issue, with notice of special matter to be given in evidence.

The cause was tried at *Hartford, January* term, 1852.

On the trial, the plaintiff offered in evidence a note, the body of which was in the hand-writing of *Ralph R. Phelps*, Esq., signed by *Marvin Bunce*, one of the defendants, to which the other defendant, *Ethan Arnold*, had affixed his mark, between his name and the word "mark;"—thus, "*Ethan Arnold's* × mark." It appeared, that the words in writing were written by said *Phelps*, at the time of the alleged execution. The defendants objected to the reading of this note, under the special count in the declaration, because, as they claimed, it varied from the note described therein. The court overruled the objection; and the note was read to the jury.

The defendants claimed, that the note had not been delivered to the plaintiff, and was not, therefore, the note of the defendants. The court instructed the jury, that the note was of no validity, unless it had been delivered.

The defendants further claimed, that at the time that *Arnold* affixed his mark to the note, he was blind, and had not intelligence enough to comprehend its import, and therefore

*Hartford,*
June, 1852.
_____
Walbridge
*v.*
Arnold.

it was void.   The court instructed the jury, that the mere inability of *Arnold* to read the note, was no objection to it, if it was fairly and fully read to him, and signed by him, and he clearly understood the nature and contents of it ; otherwise, it was absolutely void.   And as to intelligence, the court instructed them, that if *Arnold*, at the time, had mind enough fairly and fully to comprehend the cause and object of the note, (claimed to be the settlement of a private suit for damages,) and the nature and extent of it, this was sufficient to make it a good note ; otherwise, it would be absolutely void.

The defendants further claimed, that at the time when *Arnold* put his mark on the note, he was not a free and voluntary agent, but was under an arrest and detention, and in duress, by an abuse of criminal process, and was overcome by threats ; and therefore, the note was void.   The court instructed the jury, that the defendant *Arnold* must have acted as a free and voluntary agent ; that his being under an arrest and detention, (if indeed he was,) was no objection, provided it was, as the plaintiff insisted, a lawful arrest and detention, and no abuse of process, by detention or otherwise ; if this was not so, the note would be void ; and further, that a legal arrest and detention was no duress ; and threats, in order to be sufficient to avoid the note, must be such as would intimidate a man of ordinary firmness.

The defendants further contended, and offered evidence to prove, that a few days previous to the execution of said note, *Arnold* and five others had been arrested, upon a grand-juror's complaint, for having broken the public peace, by assaulting, tarring and feathering the plaintiff *Walbridge,* and stood bound over, for a further investigation before the magistrate ; that on the day to which the examination was postponed, the grand-juror agreed with *Arnold* and the others, that if they would plead *guilty* to the charge, and submit to a fine of seven dollars, each, and costs, and pay *Walbridge* the sum he demanded for damages, being the amount mentioned in the note, the prosecution should be stopped, if the court was satisfied, and no further proceedings had therein, beside said costs and damages ; that they did accordingly plead *guilty*, were fined seven dollars, each, and costs, to the acceptance of the court, for which they gave their notes

respectively to the treasurer of the town; that no further proceedings were had on the complaint; and that *Arnold*, under these circumstances, gave said note to *Walbridge*. The defendants therefore insisted, that the consideration of the note was parcel of the settlement, and in part at least for the suppression of a criminal prosecution, and was therefore void.

The plaintiff, on the other hand, denied these facts, and claimed to have proved, that the termination of the criminal proceedings was a matter entirely distinct, and constituted no part of the consideration of the note; but that the note was given upon a separate promise to *Walbridge* to satisfy his private claim.

Upon this poin, thet court instructed the jury, that there was such a principle of law as that claimed by the defendants, *viz.*, that a note founded upon an agreement or understanding, in whole or in part, to suppress an enquiry into the commission of an offence, or to prevent, in any measure, the progress and administration of criminal justice, or to shield an offender from punishment, would render the note void; but that it did not follow, that a person who was accused of a crime, could not give his note to the person injured in satisfaction of the private injury; and if, in the present case, the jury were satisfied, that the note was given to *Walbridge* freely, and not under the use of criminal process, but solely by way of settlement with him, for his private injury, it would be good.

*Arnold* claimed, that, if the jury found, that the criminal process was, in any manner, used to obtain the note, the note was void.

The plaintiff denied it was used at all, for that purpose, and claimed, that said *Arnold* acted freely and voluntarily in giving the note; and wished the settlement to be made, to stop the civil suit; and that the grand-juror made use of the criminal process for public purposes alone.

The court instructed the jury, that if it was so, as the plaintiff claimed, and further, that the note was given freely for the private claim only, it was good; but if as the defendant claimed, it was not good.

The defendants further claimed, that if the note was given, as they insisted, for the purpose of breaking up the defend-

ant, *Arnold,* in his business of selling liquor, there was no consideration for it, and it was void.

This the plaintiff denied. He insisted, the note was not exacted or given for any such purpose at all, but freely and exclusively to settle the private claim and suit of the plaintiff.

This fact was left to the jury, the court instructing them, that if the note was given solely for the purpose, and in consideration of said private settlement, as in this motion before claimed by him to be true, and in the manner claimed, the note was good; but if, as the defendant claimed, to break up his business, it was not good.

The defendants further claimed, that the grand-juror, in bringing about the settlement of said criminal proceeding, was to receive from *Arnold* and others, the sum of fifteen dollars, for the discharge of his public duty; and that said sum was embraced in the note to *Walbridge.*

The court instructed the jury, that if this was so, said note was void, and this action could not be maintained.

In the progress of the trial, the plaintiff offered *R. R. Phelps*, Esq., as a witness, who testified to a narration, by one of the associates of *Arnold* in the assault upon the plaintiff, given in the presence of *Arnold*, and within his hearing and with his approval, stating particularly the manner in which he, and *Arnold*, and the others, made the assault; and that *Arnold*, during the narration, produced a letter from *Porter*, one of their associates, then absent, shewing the more active part *Porter* had taken in the affair. This narration, the plaintiff claimed, was given on the occasion of making the note; and he offered the evidence, not for the purpose of proving that the assault had actually been made, but as shewing the cause, occasion and circumstances of *Arnold's* giving the note, and that he understood the nature and object of the settlement with the plaintiff for which it was given.

The defendants objected to the admission of this evidence; but the court overruled the objection and received it.

The jury returned a verdict for the plaintiff; and the defendants moved for a new trial.

*Fellowes* and *H. Sherman*, in support of the motion, contended, 1. That the court erred, in ruling that there was no variance between the note offered in evidence and that de-

scribed in the declaration. *Chitt. on Bills*, 570. *Levy* v. *Wilson*, 5 *Esp.* 180. *Rossiter* v. *Marsh*, 4 *Conn. R.* 196. *Fullerton* v. *Seymour*, 5 *Verm.* 249. *Child* v. *Moore*, 6 *N. Hamp.* 33. *Strader* v. *Alexander*, 9 *Port.* 441. *Pease* & al. v. *Morgan*, 7 *Johns. R.* 468.

Hartford,
June, 1852.

Walbridge
v.
Arnold.

2. That the court erred also, in instructing the jury, that the threats, in order to be sufficient to avoid the note, must be such as to intimidate a person of ordinary firmness. The issue thus put to the jury, was, whether *Arnold* was a man of ordinary firmness. This was not the true issue : the enquiry was much broader.

3. That the court erred also, in instructing the jury, that if the arrest was lawful, it constituted no objection to a recovery ; and that a legal arrest and detention were no duress. 1 *Sw. Dig.* 311. *Evans* v. *Huey* & al. 1 *Bay*, 12. *Sasportas* v. *Jennings* & al. *Id.* 468. *Collins* v. *Westbury* & al. 2 *Bay*, 211. *Watkins* v. *Baird*, 6 *Mass. R.* 506. *Chase* v. *Dwinal*, 7 *Greenl.* 134.

4. That the court erred, in admitting the testimony of *R. R. Phelps*, Esq. It did not tend to prove the matter in issue. It had nothing to do with the giving of the note.

*T. C. Perkins* and *Drake,* contra, were stopped by the court.

CHURCH, Ch. J. There are several matters to which our attention has been called, supposed to be suggested by this motion, to which we have not thought it necessary to advert. They are immaterial. Some other questions deserve consideration.

1. The declaration contains two counts ; one special, declaring on the note in suit; the other a general money count; both counts intended to set up the same cause of action. In the special count, it is alleged, that the defendants, in and by a certain writing or note, under *their hands*, by them *well executed*, promised, &c. Under this allegation, it appeared, or proof was offered, that *Arnold*, one of the defendants, executed the note in no other way than by affixing, with his own hand, his mark between his name and the word "mark;" thus, "*Ethan Arnold's* × mark;" and that the written words

were written by *Ralph R. Phelps,* Esq., by whom the body of the note was also written.

The note, thus executed, was objected to as evidence under the first count, on the ground of variance between it and the note. We think there was no essential variance. It has always been holden, that an instrument may be well executed by the mark or cross of the signer ; it is the *making of the mark,* by himself, by his own hand, which constitutes the execution of it under his hand ; the written name only designates whose mark or execution it is. This is essentially different from the cases cited by the defendants, in which the averments in the declaration were, in substance, that the notes were executed by the defendants, their own names, in their own proper hand-writing, being thereunto subscribed, &c. Nor is the case altered, by the fact, that *Phelps* guided the hand of *Arnold* in making the mark, so long as *Arnold* acted freely.

2. The defendants claimed, at the trial, that the note in suit was given without consideration ; and that said *Arnold* was a blind man, and did not know the object or purport of the note to which his mark was affixed. But the plaintiff claimed, that a violent assault and battery had been committed upon him, by several persons, with whom the defendant *Arnold* was confederate, and who were impelled and influenced by him to commit the assault ; and that the note in question was understandingly executed by *Arnold,* on a settlement and as a compromise of the damages claimed by the plaintiff of him ; and to prove that the note was thus given, *R. R. Phelps,* Esq., was called as a witness, to testify, that when the note was executed, one *Spafford,* a confederate in the assault, in the presence and hearing of *Arnold,* stated the circumstances of the assault, and *Arnold's* connexion with it. The proof thus offered was objected to, and admitted.

Although *Arnold* was blind, yet he could hear ; and if facts were stated in his hearing, which implicated him, as a participator in the crime, and showed his liability to the plaintiff ; and when this matter was the subject of consideration and conversation, and he made no contradiction, nor explanation, nor offered to do so ; this certainly conduced to prove his assent to the facts thus stated, and of course, that

he recognized his liability to the plaintiff for damages for the injury, and his willingness to execute the note in settlement; and thus prove a consideration of the note.

3. It was urged in defence, that, when this note was executed by *Arnold,* he was blind, and could not and did not read the note; that he was then under an arrest, and was held in custody under a criminal prosecution; that he was, in that condition, overcome by threats, and was not a free and voluntary agent in executing the note. In charging the jury upon this part of the defence, the court said, that threats, in order to avoid the note, must have been such as would have intimidated a man of ordinary firmness. Of this instruction the defendant complains.

If this had constituted the entire instruction of the court to the jury on this subject, we might well doubt whether the jury were not probably misled by it. Taken by itself, it was calculated to withdraw their attention from the particular circumstances of the case, and the peculiar condition of *Arnold,* as the defendants claimed them to be, and to fix it upon the case of a man of ordinary firmness, which the defendants denied *Arnold* to be. But the whole evidence was before the jury, not only as to the actual state and condition of *Arnold,* whether a man of ordinary firmness or not; but the evidence of the threats, if any, and of what nature they were, and in view of it all, the court, in addition, correctly informed them, that if *Arnold* had mind enough fairly and fully to comprehend the cause and object of the note, and the nature and extent of it; and if he acted as a free and voluntary agent in executing it, the note would be good; otherwise, it would be absolutely void. This is the fair import of the charge; and the judge was not requested to be more specific. And it seems to us to cover the whole ground of objection; and that a jury of ordinary intelligence could not have been misled, by the general principle first advanced by the judge, which was legally correct, connected with his subsequent remarks.

4. Nor had the defendants good cause of complaint, that the judge charged the jury, that a lawful arrest and detention, where there was no abuse of process, was no duress. This is an elementary principle. 1 *Sw. Dig.* 311. 2 *Inst.* 482.

The question upon the whole of this part of the case, was,

*Hartford,*
June, 1852.

Walbridge
*v.*
Arnold.

whether upon all the facts proved, the jury believed, that in truth, *Arnold* executed the note in question, as a free and voluntary agent ; and we think the jury must so have understood it ; and if so, we see no error here.

5. In connexion with the foregoing, we notice another claim of the defendants somewhat analogous in principle.   It was, that the note was given under the pressure of a criminal prosecution, and to induce a suppression of it.   The plaintiff denied this, and claimed, that the pendency of the criminal process had no influence, and was not intended to have influence, in procuring the note.   And here again, the court charged the jury, that if the note was given freely to satisfy the plaintiff's private claim for damages, it was good ; but void, if, as the defendant claimed, it was given, either in whole or in part, to suppress an enquiry into the commission of an offence, or to prevent, in any measure, the administration of criminal justice.   We cannot believe that the defendants have suffered from a charge in so many ways intended to protect their rights.

We have looked over this motion attentively, and we see no cause to grant a new trial.

In this opinion the other judges concurred.

New trial denied.