THE BANK OF COOPERSTOWN *v.* J. L. WOODS and E. A. DAYTON, impleaded with ORRIN NORTH.

A notice of protest, dated the day a note is payable, and which states the names of the maker and indorser, and the amount, is sufficient to charge the indorser, unless circumstances exist which would render the information it was designed to give equivocal and uncertain.

Where, in an action against indorsers, upon a note made by N. for $2000, dated July 6, 1857, and maturing on the 28th of August, 1857, under a notice of protest thus general, the defendants offered to prove that since the 6th of January, in that year, they had indorsed eleven other notes for N.'s accommodation, each for $2000, which notes respectively matured prior to the note sued on, and on different days in each of the months from January to August; and that for aught the indorsers knew, all of such notes were outstanding at the maturity of the note in suit; *Held,* that the former existence of those notes did not cast any additional duty upon the holder, in giving notice of the dishonor of the note sued on.

*Held, also,* that evidence showing that there were, at the time the note sued on matured, three other notes made by N. and indorsed by the defendants, each for $2000, outstanding, maturing respectively in April, June and July, 1857, was properly excluded; such notes being past due; held by other parties; and the plaintiff, so far as appeared, having no knowledge of their existence.

The obligation of the maker of a promissory note is to be present, either personally or by some agent, at the place of payment, prepared to pay. If the holder causes the paper to be presented, at that place, to the person in charge, it is sufficient; whether the person making the presentment is personally acquainted with the man having charge of the office at which the note is payable or not.

The signature of the notary, to a notice of protest, need not be in writing. It is sufficient if it be printed.

ACTION on a promissory note made by Orrin North, for $2000, payable to the order of the defendant Woods, and indorsed by him and by the defendant Dayton. It was dated at Cooperstown, July 16, 1857, and was payable at the office of Townsend, Clark & Co., No. 180 Broadway, New York, forty days after date. It matured the 28th of August, and was on that day presented by the clerk of a

notary public, at the office of Townsend, Clark & Co., to a person in charge of the office and who attended to the books and papers, who took it and examined it and replied that there were no funds there to pay it. The clerk did not personally know the man to whom he thus presented the note. A notice was, on the next day, sent by mail to the indorsers, addressed to them at their respective places of residence, at Lockport and Brockport. The one sent to Woods was in the following words:

*"New York, August* 28, 1857.
Mr. J. L. WOODS, Lockport, N. Y.,

Sir: Please to take notice that a promissory note drawn by Orrin North, for $2000, indorsed by you, is protested for non-payment, and that the holders look to you for payment thereof.        Your obedient servant,
A. R. ROGERS, Notary Public."

The notice, including the signature, was printed, except that part of the former which contained the date and address, and the name of the maker of the note.

The defendant offered to prove that there were, at the time the note sued on matured, three other notes made by North, and indorsed by the defendants Woods and Dayton, each for the payment of $2000, outstanding; that they matured, respectively, on the 30th of April, the 8th of June, and the 16th of July, 1857; that two of them were held by James C. Hamilton, and the other by the Exchange Bank of Lockport; that Woods and Dayton were accommodation indorsers on these, as they were shown to be on the note sued on. The evidence was objected to by the plaintiff's counsel as not material, and was excluded by the judge.

The defendants then offered to prove that they had indorsed another note for the accommodation of said North, for the same amount as those above mentioned, which matured on the 24th of July, 1857; that it was payable in New York, and was discounted by the plaintiff; and that for aught the defendants knew, that note was outstanding at the

maturity of the note sued on. That evidence was likewise excluded, on the plaintiff's objection. The defendants further offered to prove, that since the 6th of January in that year they had indorsed eleven other notes for North's accommodation, each for the same amount of $2000, which notes, respectively, matured prior to the note sued and on different days in each of the months of that year, from January to August inclusive; and that for aught the defendants Woods and Dayton knew, all the before mentioned notes were outstanding at the maturity of the note in suit. The evidence thus offered was also excluded, on the plaintiff's objection. The defendants' counsel requested that the point whether a sufficient presentment for payment and refusal to pay had been shown, should be submitted to the jury, which the judge accordingly did; instructing them, however, that it was not necessary that the individual making the demand should be personally acquainted with the man having charge of the office at which the note was payable. The defendants also claimed that the notice of protest was insufficient, because the signature of the notary was printed, instead of being written; but the judge overruled the point. The counsel for the defendants excepted to the several rulings adverse to them. The verdict was for the plaintiff, for the amount of the note, with interest; and the general term of the Supreme Court affirmed the judgment, upon which the defendants appealed to this court.

*J. K. Porter,* for the appellants.

*A. J. Parker,* for the respondent.

DENIO, Ch. J. It was not shown, and the evidence which was offered and excluded would not have proved, that the plaintiff, at the time the note sued on matured, held another note made by Orrin North and indorsed by the defendants. The only other such note which the plaintiff is supposed to

have held matured about a month prior to that time. It was not offered to be proved that it had been protested for non-payment, or had not been. The offer was not to show that it was in fact outstanding when the note sued on matured; but only that the defendants did not then know but that it was outstanding. The offer contains an implication that, at the time of the trial, it was known not to have been outstanding when the note sued on became payable. The facts which would have been disclosed, if the evidence offered had been received, would have been these: The plaintiff had formerly held a note corresponding with the one in suit, in the names of the maker and indorsers, and the amount and place of payment, but it became payable and was paid about a month before the note in suit matured. The question is, whether it was the plaintiff's duty to so frame his notice of protest as to exclude the supposition that the former note was the one referred to as dishonored by non-payment. It would be impossible for him to conjecture that any such misapprehension would arise in the minds of the indorsers to whom the notice was sent. They, being parties to such former note, would be supposed to know that it was no longer on foot. If they were misled by confounding it with the former note, it was on account of their ignorance of the fact that such former note had been retired. That, I think, was their misfortune, and not the fault of the plaintiff. The fact that the plaintiff had before held a note of the same parties and amount, which had been paid a month before, would not suggest to them the necessity of any special description of the note which they were causing to be protested.

The notice which was actually given was sufficient to charge the indorsers, unless circumstances existed which would render the information it was designed to give equivocal and uncertain. This was so held, by this court, in *Youngs* v. *Lee*, (2 Kern. 551,) where the notice was precisely like the one given in this case. Then, as to the eleven notes mentioned in the last offer, it was not proposed to

prove that any of them were really outstanding when the note sued on was protested. They had all become payable before that time, and the only difficulty was that the defendants did not know but that they were outstanding dishonored. The offer presents the same question which was raised in respect to the note above mentioned, except that the plaintiff had not been the holder of, or in any way connected with them. The case is to that extent more favorable to the plaintiff than the one which we have just considered. The observations made respecting that offer are at least equally applicable to the offer respecting the eleven notes. Their former existence did not cast any additional duty upon the plaintiff in giving notice of the dishonor of the note now in question.

The remaining question relates to the three notes mentioned in the first offer of proof made on the trial. It was proposed to show that they were in fact outstanding when the note now in question matured. They each corresponded with this note in the names of the parties and the amount. But they were past due; they were held by other parties, and the plaintiff had no connection with them; and, so far as appears, had no knowledge of their existence. Whether the defendants had been charged as the indorsers upon them is not stated. The defendants' point is, that the notice of protest in the present case was uncertain and insufficient, because the defendants may have mistakenly supposed that it referred to one of these notes, all of which had been for some time past due. The argument derives some countenance from the case of *Cook* v. *Litchfield*, (5 Seld. 279.) But I think it is not governed by that case. There the plaintiff held four notes, precisely alike as to parties, date and amount, but they matured in successive months. They were protested as they respectively became payable, and the notices' specified the maker's name, the date and amount accurately, but did not, in either instance, mention the time of credit mentioned in them, or the day they became paya-

ble; but they stated that they had been protested for non-payment the day they became payable. There was nothing in either of the notices which showed to which of the four notes it referred, unless it might be gathered from their dates, which were the date of the maturity of the respective notes. This court held the notices insufficient, except as to the note which first matured. The case differs from the one before us, in this: The plaintiff there held all the four notes, and he therefore knew that there was a chance for misapprehension when he gave the second and succeeding notices, which each contained a description that would apply precisely as well to any one of the four notes as to any other of them. He was therefore, as the court held, without excuse in not adding some discriminating statement which would enable the indorsers to know to which of the dishonored notes it applied. Here, the bank knowing nothing as to the other dishonored notes mentioned in the offer, could not be expected to frame its notice with any regard to them. If he sent a notice sufficiently descriptive to perfectly identify the note in the mind of one having only the knowledge which he had, I think he was not guilty of laches. It was the misfortune of the defendants, if their dealings of a similar nature with the maker of the notes was so extended that a notice of protest which would ordinarily be sufficient, did not, under these circumstances, suffice to acquaint them of the dishonor of the note held by the plaintiff. A notice may be so defective that we can see that under ordinary or probable circumstances it would not identify any paper. Such was the case of *The Home Insurance Co.* v. *Green*, (19 N. Y. Rep. 518,) where the space for the maker's name was left blank, and the name was not at all mentioned.

The other questions do not call for any extended remarks. The point as to the presentment for payment, and the refusal, was submitted to the jury, according to the defendants' express request. The instruction which accompanied the submission was right. To require that the person making the

presentment should have a prior personal acquaintance with the party in charge of the place of business at which the paper was made payable, would be imposing a condition which would often be difficult to fulfill. The obligation of the maker is to be present, either personally or by some one on his behalf, at the place of payment, prepared to make the payment. If the holder causes the paper to be presented at that place, to the person in charge, it is sufficient, whether there is a personal acquaintance between the agents or not.

We are not referred to any authority to show that the notice of non-payment must be signed manually by the notary. On principle I think it unnecessary, if his name appears at the foot of the notification. It as fully acquaints the indorser of the dishonor of the note as would the manuscript signature of a person whose handwriting he did not know; and it certainly is not expected that the indorser should know the handwriting of the notary.

The judgment must be affirmed.

SELDEN, J. took no part in the decision; and MULLIN, J. did not dissent.

All the other Judges concurring,

Judgment affirmed.