LEO OPPENHEIMER, as Trustee in Bankruptcy of the Estate of FRANK SQUIER, Deceased, Respondent, *v.* JAMES A. ROBERTS, Appellant.

First Department, December 8, 1916.

Bills and notes — action by trustee in bankruptcy against indorser of note — suspension of Statute of Limitations by bankruptcy — laches no bar to action — withdrawal of motion for direction of verdict, when timely — defense — discharge of indorser by failure to give notice of protest — burden of proof — evidence of protest where notary is dead — Code of Civil Procedure construed — evidence not raising presumption that notice was mailed.

Where the Statute of Limitations has not run on an action by a trustee in bankruptcy on promissory notes held by the bankrupt, owing to the fact that the Bankruptcy Act suspends the running of the statute in favor of such trustee, a recovery is not barred by laches because the

action was delayed more than seven years, for an action at law timely brought with respect to the Statute of Limitations cannot be deemed barred by mere laches without evidence of estoppel.

Where such action is brought against an indorser who, as a defense, alleges that he was discharged from liability, in that the notes were never duly protested, and he did not receive due notice of dishonor, and he has served an affidavit to that effect, pursuant to section 923 of the Code of Civil Procedure, the plaintiff was under the burden of giving due proof of notice of protest.

Where the notary claimed to have given notice of protest is dead, the fact that he mailed a notice cannot be established by a certificate which is not under his hand and official seal, but which merely bears his printed name without signature or seal.

Nor can due protest be established by evidence that it was the habit and custom of the notary to protest notes which were not paid by three o'clock on the day they were due and that he was a very careful and methodical man and entered memoranda in a book, and especially so where the book is not produced nor any evidence given as to its contents.

Even where the original protest is under the hand and official seal of the notary, proof of the genuineness of these must be made.

Moreover, evidence that certain figures on the back of the notice of protest, which was not personally signed, were in the handwriting of the notary and included a charge for mailing the notice, is no proof that they were actually mailed.

Where both parties on a trial of such action moved for the direction of a verdict and the court said that if the motions were made he would grant the plaintiff's motion and deny that of the defendant, the latter had a right to withdraw his motion and to have the question as to whether due notice of protest was mailed submitted to the jury, for no directed verdict had as yet been rendered and it was error for the court to rule that the request came too late and to direct a verdict for the plaintiff.

APPEAL by the defendant, James A. Roberts, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of March, 1916, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 29th day of March, 1916, denying defendant's motion for a new trial made upon the minutes.

*Frank Moss,* for the appellant.

*William E. Collins* [*Abram I. Elkus* with him on the brief], for the respondent.

Laughlin, J.:

This is an action by the trustee in bankruptcy of Frank Squier, deceased, to recover against the defendant as indorser of four promissory notes all made by one H. D. Selleck and payable at the Queens County Trust Company. The defendant was interested with Squier, Selleck and others in the Carabaya and Porras rubber business; and Squier was president of said trust company. The notes are Exhibits 2, 3, 4 and 5. The first three are payable to the order of the maker and the last to the order of the defendant. Exhibit 2 was indorsed by Selleck, the defendant, Warner Miller, George P. Folts, who were likewise interested in said business, and by Squier; Exhibit 3 was indorsed by Selleck, Miller and the defendant; Exhibit 4 was indorsed by Selleck, Roberts and Miller; and Exhibit 5 by the defendant only. All the notes were negotiated by the maker who, through Squier, procured their discount by the trust company. After maturity on the 26th day of December, 1907, Squier took them up from the trust company by giving his own check therefor. The plaintiff qualified as trustee in bankruptcy of Squier on the 29th day of June, 1908, and thereafter and in the year 1908 Squier died. This action was brought on the 11th day of November, 1915, pursuant to an order of the United States District Court.

Were it not for the intervention of the bankruptcy proceedings this action would be barred by the Statute of Limitations, for the last note was due on the 11th day of July, 1907; but by virtue of the provisions of subdivision d of section 11 of the Bankruptcy Act of 1898 (30 U. S. Stat. at Large, 549) the running of the statute was suspended in favor of the trustee in bankruptcy. It is not claimed, therefore, that the action is barred by the Statute of Limitations; but it is contended that it should be deemed barred by laches in delaying the bringing of the action for more than seven years, thereby prejudicing the right of the defendant to recover over against the maker. There is no force in that contention, for an action *at law* timely brought with respect to the Statutes of Limitation cannot be deemed barred by mere laches without evidence of estoppel. (*Ormsby* v. *Vermont Copper Mining Co.*, 56 N. Y. 623. See, also, *Galway* v. *Met. El. R. Co.*, 128 N. Y.

132, 153.) If the liability of the defendant was fixed, he was at liberty to take up the notes in time to sue others who were liable thereon to him. The defendant, however, put in issue the allegations of the complaint with respect to the protest of the notes, and due notice of protest and dishonor to him. Evidence was given on the part of the plaintiff which it was claimed showed that the defendant was given due notice of protest and dishonor by mail at his business address; but the testimony of the defendant shows that he received no notice of protest or dishonor of any of the notes at the address to which it is claimed they were sent or elsewhere. At the close of the evidence counsel for the defendant moved for the direction of a verdict on the ground that the evidence adduced by the plaintiff was insufficient to show the mailing to him of the notices of protest and dishonor. Counsel for the plaintiff also moved for the direction of a verdict. The court, thereupon asked whether both sides moved for the direction of a verdict, and upon the counsel for the plaintiff replying in the affirmative the court said: "If that motion is made I will grant the plaintiff's motion and deny yours," addressing counsel for the defendant. Counsel for the defendant thereupon stated that in view of the announcement of the court there was a matter which he would like to present to the jury, if his motion for the direction of a verdict was denied; and he asked leave to withdraw that motion. The court ruled that this request was too late, as it came after the court had ruled on a motion to direct a verdict; whereupon counsel for defendant said: "If your Honor is under the opinion that you have disposed of the matter, there is nothing for us to do but to take our exception," to which the court replied: " Yes, an exception to both the denial of the motion and the granting of the plaintiff's motion. A verdict is directed for the plaintiff in the sum of $5,705.25." The record shows that thereupon the jury, by direction of the court, rendered a verdict in favor of the plaintiff for the amount stated.

Assuming that the evidence on the part of the plaintiff was sufficient to warrant a finding that due notice of protest and dishonor was given to the defendant by mail, still that evidence was put in issue by the defendant's testimony that he did

First Department, December, 1916.     [Vol. 175.

not receive such notice, and that presented a question of fact which the defendant had the right to have the jury determine. The request to withdraw the motion for a direction of a verdict and to have the case submitted to the jury was timely made when the court announced that the motion for a direction of a verdict in favor of the defendant would be denied and that a verdict would be directed on the plaintiff's motion; for according to the record the verdict had not been rendered, and inasmuch as there was no request by the court to have counsel for the defendant state the questions of fact upon which he desired to go to the jury, it was not essential that they be stated. (*Brown Paint Co.* v. *Reinhardt*, 210 N. Y. 162.) This erroneous ruling requires a new trial, but there are certain questions presented which will necessarily arise on the new trial, and inasmuch as we are of opinion that the rulings thereon were erroneous we deem it proper to express our view for the guidance of the trial court should the evidence be the same. The plaintiff claims that Exhibits 2 and 5 were protested and that notice of protest was mailed to the defendant by one Wyckoff, who at the time the notes became due was the secretary of the trust company and a notary, but who died prior to the commencement of the action. The defendant served an affidavit as provided in section 923 of the Code of Civil Procedure and thereupon it became the duty of the plaintiff to prove due presentment for payment and to give due proof of notice of protest for non-payment; but by virtue of section 924 of the Code of Civil Procedure, owing to the death of the notary who, it is claimed, presented two of the notes for payment, and protested them for non-payment, and mailed notice thereof to the defendant, presumptive proof of a demand of payment could be made by his original certificate of protest *under his hand and official seal;* and presumptive proof that notice of non-payment was " sent or delivered " to the defendant could have been made by proving an original memorandum " personally made or signed by him, at the foot of a protest, or in a regular register of official acts, kept by him," showing " the time " and "manner " of such sending or delivery. The evidence presented by the plaintiff was insufficient under these provisions of the Code. One Stecher, who was assistant secretary of the

trust company when the notes matured, testified that it was the habit and custom of Wyckoff to receive the notes that were not paid by three o'clock, and that he "then protested them and made out the notices and entered them in his little book and mailed it in the box right in the hall, probably 12 or 15 feet from where he sat," and that Wyckoff was "a very careful and methodical man." This evidence was received over defendant's objection and exception duly taken. Manifestly it was not competent evidence to show the demand of payment of the notes in suit or the due mailing of notice of protest thereof. In *Zucker* v. *Whitridge* (205 N. Y. 50) it was held that proof of care by a person killed in an accident cannot be made by proof of his general habit or custom with respect to the exercise of care. That rule is applicable here. The same witness testified that Wyckoff entered his transactions as a notary in a small book; that on Wyckoff's death the contents of his desk were turned over to his widow; that he had not seen the book since Wyckoff's death, and that he had made a thorough search for it in the trust company's storeroom but was unable to find it. Wyckoff's widow was unable to appear as a witness, and it was stipulated that she would have testified that she received from the trust company *certain* books, papers and records kept by her husband as its secretary; and that she had made a thorough search for them but was unable to find any record made by him of the protest of any notes for the company or the sending of notices of protest thereof. The book was not produced nor was any evidence offered with respect to its contents, or that it contained any note or memorandum personally made or signed by the deceased notary with reference to these or any other notes. There was attached to each of these notes a printed form of certificate of protest used by Wyckoff in protesting notes for the company, with his name printed thereon, but not signed by him, and with his official seal impressed thereon, and with the date, which was the due date of the note, written in by him, and in a blank form on the back of each certificate Wyckoff wrote the name of the maker, the date of protest, which was the due date of the note, the amount of the note, and in a printed blank for fees and disbursements he wrote the

amount " $1.50 " in one instance and " $1.25 " in the other, and he also wrote the total of the two amounts over his printed signature as notary. These certificates of protest were received in evidence over the objection duly interposed by the defendant on the ground, among others, that they did not conform to the requirements of section 924 of the Code of Civil Procedure. We are of opinion that the objections were well taken, and should have been sustained. The statutory substitute for common-law proof of the fact with respect to the demand of payment is the original protest *under the hand and official seal of the notary*, proof of " the genuineness " of which must first be made. These statutory provisions now contained in said section 924 of the Code are a consolidation of the provisions of sections 46 and 47 of title 2 of chapter 3 of part 3 of the Revised Statutes (2 R. S. [1st ed.] 283, 284) which in section 46 made the original protest of the notary under his official seal upon due proof of "such seal and his signature" presumptive evidence of the "demand * * * of payment, therein stated." The statute, therefore, requires that the original protest shall be personally signed by the notary. (See *Salazar* v. *Taylor*, 18 Col. 538; 33 Pac. Rep. 369; *Walbridge* v. *Arnold*, 21 Conn. 424; 2 Bouvier L. Dict. "Hand," 1416.) There is no statutory requirement that the *notice of protest or dishonor* shall be personally signed by the notary. No particular form of notice of dishonor is required and it need not even be in writing. (Neg. Inst. Law, § 167.) Therefore, the decisions holding that a printed signature thereto will answer (See *Bank of Cooperstown* v. *Woods*, 28 N. Y. 561; *Fulton* v. *Maccracken*, 18 Md. 528) have no application to the constructions of such statutory provisions as those now under consideration. We think it will not do to depart from the strict observance of these statutory requirements by accepting as a compliance therewith the printed name of the notary. The statute clearly requires that the original protest shall be signed by him to render it competent evidence in the case of his death. The only other evidence with respect to the sending or delivery of the notice of non-payment is general testimony given by Stecher, who in answer to a question propounded by counsel for the respondent as to whether, in the figures written by Wyckoff on the back of each notice of pro-

test, there was included a charge for mailing the notice of protest, said: "That includes everything, all charges." Of course that affords no proof of the sending or delivery of the notices. The only substitute prescribed by these provisions of the Code for common-law proof of the mailing of notice of protest in the event of the death or other disability of the notary is a note or memorandum either personally made by him or signed by him with respect to the sending or delivery of the notice, showing the time and manner of such sending or delivery. It may be that upon proof that such note or memorandum was made at the foot of the protest or in a regular register of the official acts of a notary, kept by him, that parol evidence of the contents thereof would answer upon its being shown that the original writing was lost or destroyed without fault of the plaintiff; but here we have no evidence of the official record, if any was made by the notary with respect to the sending or delivery of notice of non-payment of these notes. With respect to the two notes, therefore, claimed to have been protested by Wyckoff the plaintiff's evidence was insufficient to take the case to the jury. There was a separate motion for the dismissal of the complaint with respect to these two notes which should have been granted owing to the failure of proof; but since a new trial must be granted with respect to the other causes of action we think the plaintiff should not be precluded from attempting to supply the requisite proof with respect to these two causes of action.

The other notes were protested by Stecher. There appears to be merit in some of the criticisms with respect to the evidence of the protest and notice of non-payment of those notes also; but since they may be obviated on a new trial we deem it unnecessary to discuss them at this time; and the same is true with respect to other rulings of which complaint is made. It follows, therefore, that the judgment and order appealed from should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., SCOTT, DOWLING and PAGE, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.