**George FELDMAN, as Trustee in Bankruptcy of Leasing Consultants Incorporated, Bankrupt, Plaintiff,**

**v.**

**TRANS–EAST AIR, INC., et al., Defendants.**

**No. 72–C–1010.**

United States District Court, E. D. New York.

Aug. 1, 1973.

Hahn, Hessen, Margolis & Ryan, New York City, for plaintiff.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant Hudleasco, Inc.

Aranow, Brodsky, Bohlinger, Benetar, Einhorn & Dann, New York City, for defendant Castle Capital Corp.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

This is an action by a trustee in bankruptcy to recover three aircraft and the proceeds derived therefrom. Also pending in a collateral bankruptcy proceeding is a petition to review an order of the referee in bankruptcy dated September 5, 1972. For the reasons stated below, defendants' motion to dismiss in the plenary action must be granted and the decision of the referee must be affirmed.

## I. FACTS

In August, 1967, the defendant Trans-East Airlines, Inc. ["Trans-

East"] contracted with De Havilland Aircraft of Canada, Ltd. for the purchase of the three aircraft in question. The cost of each airplane was to be approximately $312,000.00.

When the various aircraft were ready for delivery, Trans-East assigned its right to purchase as to two of the planes to the defendant Hudleasco, and as to the third plane to the defendant Castle Capital.

The planes were duly purchased and Hudleasco and Castle Capital each then leased its plane or planes to Trans-East. Each lease contract included a purchase option. Both Hudleasco and Castle Capital registered their title to their respective aircraft with the Federal Aviation Administration in Oklahoma City pursuant to the provisions of the Federal Aviation Act. 49 U.S.C. § 1301 et seq.

Trans-East subsequently went out of the airline business and became a fixed base operator at Bangor International Airport in Maine. By separate agreements dated March 15, 1969, Trans-East sublet the three aircraft to Leasing Consultants, Inc. ["LCI"], the bankrupt.

LCI was a public corporation, engaged in the business of leasing aircraft, computers and other equipment. On August 18, 1970, LCI filed a petition for arrangement pursuant to Chapter XI of the Bankruptcy Act. On August 24, 1970, a petition by the debtor in possession was prepared which sought the rejection of certain executory contracts pursuant to section 313(1) of the Bankruptcy Act. 11 U.S.C. § 713(1). Among these executory contracts were the three "Aircraft Leases" between Trans-East as lessor, and LCI as lessee.

LCI had leased these aircraft from Trans-East for sublease to its wholly owned subsidiary, Florida Atlantic Airlines, Inc. This subsidiary had been engaged in operations as a third level air carrier between Florida and the Bahamas. Prior to August 18, 1970, Florida Atlantic's operating certificate had been suspended by the Federal Aviation Administration and the planes were not in use. The $18,150 per month rental due from LCI to its lessor was onerous and burdensome under the circumstances.

A hearing was held to consider the petition on September 2, 1970, before Referee Rudin. There was no opposition and LCI's petition was granted. On September 8, 1970, an order was entered which rejected LCI's leases with Trans-East as well as other executory contracts. Trans-East subsequently took possession of the aircraft.

On October 14, 1970, LCI consented to its adjudication as a bankrupt and the plaintiff in this action was appointed trustee.

At the time of the rejection by LCI of the subleases, Trans-East was in default in the rentals owed to Hudleasco and Castle Capital under the leases, and it was apparent that Trans-East could not meet the rental payments in the absence of a new sublease of the aircraft.

The task of finding a new sublessee was made particularly difficult by the condition of the market for such aircraft at the time. As shown by defendants' affidavits—uncontroverted by plaintiff—in the fall of 1970 and for some time thereafter, the market for this type of aircraft was extremely weak. Considerable effort was expended by these defendants in obtaining new sublessees and, ultimately, vendees for the aircraft.

In March of 1971, the trustee served the defendants, Trans-East, Hudleasco, and Castle Capital with subpoenae to appear for examination pursuant to section 21(a) of the Bankruptcy Act.

In January, 1972, suit was commenced by the trustee in the bankruptcy court to vacate the referee's order of September 8, 1970. The bankruptcy court declined summary jurisdiction on the grounds that other rights "have vested [and] positions have changed." A petition to review this decision was filed,

and on July 28, 1972, the instant plenary action was commenced.

## II. ISSUES PRESENTED

Plaintiff's claim in both the petition to review the referee and the plenary action rests on his allegation that the aircraft "leases" entered into by Trans-East as lessor and LCI as lessee were in fact contracts of conditional sale or "conveyances" within the meaning of the Federal Aviation Act of 1958.. 49 U.S.C. § 1301(17).

The Federal Aviation Administration has established and maintains a system for the recordation of "any conveyance which affects the title to, or any interest in, any civil aircraft in the United States." 49 U.S.C. § 1403(a)(1). Section 1403(c) of title 49 provides that no conveyance of an aircraft shall be valid against any person other than the person by whom the conveyance is made or given or any person having actual notice until such conveyance is filed for recordation pursuant to the statute.

It is undisputed that the Trans-East-LCI leases were not recorded pursuant to the statute. Accordingly, plaintiff claims Trans-East held only an unperfected security interest in the aircraft and under the status granted the trustee by sections 70c and 70e of the Bankruptcy Act, Trans-East's interests are invalid as against the trustee. 11 U.S.C. § 110(c), (e).

Even if the trustee were to succeed in proving that the "leases" were conditional sales agreements, he would have two other burdens to overcome.

First, the trustee would have to establish by his somewhat questionable "domino" theory that a conveyance by Trans-East to LCI could have vitiated the registered title of Hudleasco and Castle Capital. This theory, if valid at all, would depend on factual proof that Hudleasco and Castle Capital in effect consented to a conveyance.

Second, the trustee would have to prove that he did not abandon the leases

by failing to affirm them pursuant to section 70(b) of the Bankruptcy Act.

These difficult questions of fact and law need not be decided because plaintiff must be barred from recovering control of the aircraft by the doctrines of laches and estoppel.

## III. LAW

### A. ESTOPPEL

■ Referee Rudin's order of September 8, 1970, disaffirming the leases totally divested LCI of any interest in the leased aircraft to which the trustee could succeed. Plaintiff argues that he was not a party to that order which was obtained by the debtor-in-possession, and accordingly he cannot be bound by the order. It is, however, well established that a "trustee in bankruptcy can be estopped to the same degree as any other party." Brownstein v. Aluminum Reserve Corp., 245 F.2d 82 (2d Cir. 1957).

■ A disaffirmance during an arrangement proceeding is effective for all purposes notwithstanding the fact that the arrangement is ultimately not confirmed, and that the debtor is adjudicated a bankrupt. 1–A Collier, Bankruptcy Manual ¶ XI–3.03(2) (1972); **9** Collier on Bankruptcy ¶ 7.15 [4.1] (14 ed. 1971).

■ The trustee is bound by the action of the debtor in possession:

"A debtor continued in possession by court order is a court officer analogous to a receiver or trustee. . . . It is incredible that another officer subsequently appointed need [repeat an action of the receiver] . . . at least in the absence of some extraordinary circumstance." In re Wil-Low Cafeterias, 111 F.2d 83, 84–86 (2nd Cir. 1940).

*See also* Gardner-Denver Co. v. C. J. Haslam, Inc., 325 F.2d 208 (2d Cir. 1963). Although the precise holding of the *Wil-Low* case has been varied by statutory amendment, the underlying

reasoning of the case is still applicable, *i. e.*, action by the debtor-in-possession or receiver of an arrangement proceeding pursuant to a court order is binding upon a subsequently appointed trustee in bankruptcy. In re Wil-Low Cafeterias, *supra* at p. 84 of 111 F.2d.

■ While the trustee might attack the referee's order by proof that it was fraudulently induced or procured in bad faith or by reason of misconduct, where the trustee would, at the time of the 1970 proceeding, have represented substantially the same interests as the debtor-in-possession, he cannot be permitted to relitigate a matter which was finally determined by the referee. *See* In the Matter of Imperial "400" National, 391 F.2d 163 (3d Cir. 1968).

In the case at bar, it is apparent that had the trustee appeared in the proceeding to disaffirm the leases, he would have taken the same position as the debtor-in-possession did in fact take. Plaintiff admits that at that time the leases were "onerous and burdensome under the circumstances." The fact that at a later time market conditions had changed for the better is no valid reason for ignoring the earlier position of the debtor-in-possession, and his successor, the trustee. Now that the aircraft have value, the trustee cannot be heard to say he wants to recover them.

■ It is clear that the defendants Trans-East, Hudleasco and Castle Capital all relied on the referee's order of disaffirmance and that they were entitled to do so. Defendants expended substantial sums of money and a considerable amount of time in re-leasing the aircraft. In view of the depressed condition of the aviation market and the volatile value of the type of aircraft in question, there is no question that a substantial portion of the current value of the aircraft is the result of the expertise, efforts and expenditures of the defendants.

Burdened with a deteriorating asset of the type under consideration, defend-

ants undoubtedly had the right to rely on the disaffirmance order of the referee. Reliance on the order of September 8, 1970, was the only reasonable course, defendants could have followed. *Cf.* Stauduhar v. Limbach, 308 F.Supp. 696 (E.D.Wis.1970).

### B. LACHES

■ Laches consists of two elements: inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay. Alexander v. Phillips Petroleum Co., 130 F.2d 593 (10th Cir. 1942).

■ Defendants have cited a line of cases finding inexcusable delay in instituting suit after relatively short periods of time. *See, e. g.*, In re Village Men's Shops, Inc., 186 F.Supp. 125 (S.D.Ind. 1960) (7 months). Conversely, plaintiff asserts that the trustee can never be barred by laches if he commences suit within the two year statute of limitations period. Oppenheimer v. Roberts, 175 App.Div. 424, 161 N.Y.S. 1049 (1st Dep't 1916). It is fruitless to attempt to determine any fixed period of time within which, or outside of which, a plaintiff cannot be, or must be, guilty of laches. The existence or non-existence of laches depends on the equities and the facts of the particular case.

[8, 9] In the case at bar, plaintiff's delay in bringing suit must be termed inexcusable. At the oral argument on this motion, plaintiff's attorney made much of the fact that the LCI proceeding in general is a "complex multifacet bankruptcy proceeding." Complexity of the overall proceeding in the circumstances of this case cannot be considered as a factor in determining possible laches on the part of a trustee in asserting a particular claim. The complexity of a proceeding should be considered by the trustee when he takes the responsibility of his office, and the rights of third parties cannot turn on the resources or experience of the trustee.

The principal factor rendering the trustee's delay in bringing this action unreasonable lies in the nature of the assets themselves. The airplanes were a rapidly deteriorating asset, and if neglected, they would have lost substantial value rapidly. Holding such a deteriorating asset, the only reasonable course of action for defendants was the one they followed: attempts, ultimately successful, to re-let the aircraft. *See* Stauduhar v. Limbach, 308 F.Supp. 696 (E.D.Wis.1970).

Plaintiff suggested both in his memoranda and at the oral argument that defendants were given effective notice of his claim upon service of the trustee's subpoenae duces tecum in March of 1971, and could at that time have commenced suit to clear title pursuant to 28 U.S.C. § 1655. Such a burden should not be placed on the defendants who were reasonably relying on the only court determination then extant, the September 8, 1970, order of Referee Rudin.

■ Conversely, if the trustee had a claim to assert to these assets of highly speculative character, he was under an affirmative obligation to assert it unequivocally and expeditiously. A court of equity cannot now look favorably on trustee's claim, some two years after the referee's order of disaffirmance, and after the aircraft market has recovered:

> "The injustice of permitting one, holding the right to assert an interest in property of a speculative character, to voluntarily await the event and then decide, when the danger is over and the risk has been that of another, to come in and share the profit, is obvious. In such circumstances, persons having claims to property are bound to use the utmost diligence in enforcing them." Alexander v. Phillips Petroleum Co., 130 F.2d 593, 605 (10th Cir. 1942).

*See also* Preston v. Kaw Pipe Line Co., 113 F.2d 311 (10th Cir. 1940).

■ As to the second element of laches, the prejudice to these defendants resulting from plaintiff's inexcusable delay in bringing suit is apparent. The efforts and expenditures on the part of the defendants in re-letting the aircraft have been discussed above.

Furthermore, it should be noted that from the time of the referee's order of disaffirmance, through the early part of 1972, Trans-East was an operating entity. As of May, 1972, it went into reorganization under Chapter 10 of the Bankruptcy Act. The current suit was not filed until July of 1972. The court would find prejudice solely from the fact that the defendants Hudleasco and Castle Capital forebore assertion of their possible legal rights against Trans-East in reliance on the apparent validity of their new leases.

Both inexcusable delay on the part of plaintiff in bringing this action and prejudice resulting to defendants being evident, the court finds the defense of laches applicable.

## IV. CONCLUSION

■ The purpose of the bankruptcy statute is to secure prompt and effective administration and settlement of the estate of a bankrupt. Crosby v. Mills, 413 F.2d 1273, 1276 (10th Cir. 1969). Whether a claim by the trustee is barred must be decided within the factual contours of the particular case.

■ The speculative nature of the asset in question, the uncertain and fluctuating market conditions in the aviation industry, and the possibility of rapid deterioration of the asset all lead to the conclusion that the trustee cannot be heard to attack the referee's order of disaffirmance nearly two years later. *See* Alexander v. Phillips Petroleum Co., 130 F.2d 593, 605 (10th Cir. 1942); Preston v. Kaw Pipe Line Co., 113 F.2d 311, 313 (10th Cir. 1940).

Accordingly, the motions of defendants Hudleasco and Castle Capital to dismiss the complaint in the plenary action are granted. The order of the referee in bankruptcy dated September 5, 1972, is affirmed.

So ordered.