554 F.Supp. 519 (1982)
NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND, Plaintiff,
v.
John HOH, et al., Individually and as Trustees of the Brewery Workers Pension Fund, et al., Defendants.
No. 81-CV-1172.
United States District Court, N.D. New York.
August 13, 1982.
*520 *521 Peter P. Paravati, Utica, N.Y., for plaintiff.
Sipser, Weinstock, Harper, Dorn & Leibowitz, New York City, for defendants Hoh, Borra, Pfleiderer, Walsh, Siegmann, Accetta, Carroll and Greenhut; Susan Martin, New York City, of counsel.
Moskowitz, Altman & Frankel, New York City, for defendant Jerome Tierman; Steven M. Berlin, New York City, of counsel.
Friedman & Gass, P.C., New York City, for defendant PepsiCo, Inc.; Peter N. Wang, New York City, of counsel.
Rogers & Wells, New York City, for defendant F & M Schaefer Brewing Co.; David A. Schulz, New York City, of counsel.

MEMORANDUM-DECISION and ORDER
MINER, District Judge.

I
In this action plaintiff, New York State Teamsters Conference Pension and Retirement Fund, seeks to recover pension benefits and credits allegedly illegally paid to defendant Hoh, and further seeks a judgment declaring that defendants Hoh, Accetta, Greenhut and Carroll are not entitled to any pension credit for the years during which contributions were paid on their behalf by a company which allegedly was not their employer. The complaint is predicated upon § 302 of the Labor Management Relations Act, 29 U.S.C. § 186; jurisdiction is based upon § 302(e) of that Act, 29 U.S.C. § 186(e).[1] Before this Court are motions by defendants PepsiCo, Inc., F & M Schaefer Brewing Company and Jerome Tierman to dismiss the complaint for failure to state a claim. Fed.R.Civ.P. 12(b)(6). Also before the Court are motions by defendants F & M Schaefer Brewing Company, Hoh, Borra, Pfleiderer, Walsh, Siegmann, Frank, Fink, Accetta, Carroll and Greenhut for summary judgment on the claim, and motions by these individual defendants for summary judgment on the counterclaims. Fed.R.Civ.P. 56.

II
This action involves the legality of certain payments made to the Brewery Workers Pension Fund (hereinafter "Brewery Fund"). The New York State Teamsters Conference Pension and Retirement Fund (hereinafter "Teamsters Fund") claims that *522 these contributions were made by brewery employers to certain union officials in violation of § 302 of the Labor Management Relations Act.
Prior to its merger with the Teamsters Fund, the Brewery Workers Fund was a jointly administered, multi-employer pension plan, originally created pursuant to a collective bargaining agreement dated June 21, 1949 between ten metropolitan New York brewers and seven local brewery workers unions. (Affidavit of Thomas Donahue, ¶ 2). The Brewery Fund was created pursuant to § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5).[2] As required by that Act, employees' contributions were held in trust by a board which consisted of both employer and union appointed trustees.
Under successive collective bargaining agreements that governed both the obligations of the brewery employers to contribute *523 to the Brewery Fund and the rights of employees to accrue pension benefits, any brewery employee who was elected to union office was granted a "leave of absence" from his employer.[3] (Affidavit of John Hoh, ¶ 6, Ex. A). Moreover, such union officers were expressly authorized by the Brewery Fund Plan to continue to participate as members of the Brewery Fund during their leaves of absence. (Affidavit of John Hoh, ¶ 7, Ex. B).[4]
Defendants allege that pension contributions to the Brewery Fund on behalf of the union officers were at all times paid by the unions themselves and that, during the entire existence of the Brewery Fund, it was accepted administrative procedure for these contributions to the pension fund to be paid by the unions through the brewery employers. (Affidavit of Thomas Donahue, ¶ 4). Thus, defendants contend, the employers were used by the local unions merely as a conduit. This "conduit" procedure was found acceptable by the Brewery Fund trustees. (Affidavit of Thomas Donahue, ¶¶ 5-6; Affidavit of John Hoh, ¶¶ 8-10; Affidavit of Kenneth Carroll, ¶¶ 3-6).
On the other hand, plaintiff alleges that the defendant union officials were not employees of the brewery companies and that "references in the Plan or Labor Bargaining Agreements to leaves of absence or a retention of seniority could not create a valid employee relationship between these defendants and the Brewery companies." (Affidavit of Peter P. Paravati in Opposition to Motion of Hoh, et al., ¶ 4). Plaintiff further maintains that contributions, on behalf of the elected union officials, were made "to the Pension Fund by various breweries [employers]" at a time when those defendants were "full time employees of the brewery unions involved." Id.
In 1973 the Brewery Fund entered into a Merger Agreement with the Teamsters Fund. In February, 1974 the Teamsters Fund repudiated its obligation under the agreement when the trustees of the Teamsters Fund informed the Brewery trustees that they would not proceed with the merger, purportedly because the Brewery Fund was believed to be in dire financial straits. (Affidavit of Peter P. Paravati in Opposition to Motion of Hoh, et al., ¶ 24).[5] There then ensued seven years of litigation in federal and state courts, on behalf of either the Teamsters Fund or the Brewery Fund, to nullify or enforce the Merger Agreement.
Following the Teamsters Fund's repudiation of the Merger Agreement, the Brewery Fund and its trustees commenced an action in the New York Supreme Court, Queens County, in May, 1974, seeking specific performance of the Merger Agreement and a declaration that the agreement was valid, binding and enforceable. Summary judgment was granted in favor of the Brewery Fund on April 29, 1975. This judgment was affirmed by the Appellate Division, Second Department, 49 A.D.2d 755, 374 N.Y.S.2d 590, and the Teamsters Fund's motion for leave to appeal was denied by the Court of Appeals on February 10, 1976. Brewery Workers Pension Fund v. New York State *524 Teamsters Conference Pension and Retirement Fund, 38 N.Y.2d 709, 382 N.Y.S.2d 1028, 346 N.E.2d 558 (1976).
The Brewery trustees resigned effective December 1, 1976 and allegedly attempted to transfer the assets and documents of the Brewery Fund to the Teamsters Fund in accordance with the terms of the Merger Agreement. The Teamsters Fund refused to accept those assets and documents. Thereafter, the Brewery trustees applied for an order and supplemental judgment to specifically enforce the terms of the Merger Agreement. The order and supplemental judgment was entered on April 12, 1977. The April 12, 1977 Order and Supplemental Judgment was affirmed by the Appellate Division. Brewery Workers Pension Fund v. New York State Teamsters Conference Pension and Retirement Fund, 62 A.D.2d 1046, 404 N.Y.S.2d 158 (2d Dep't 1978).[6]
While the state proceedings were pending, the Teamsters Fund commenced an action in United States District Court for the Western District of New York. Plaintiffs there sought to enjoin the Brewery Fund from proceeding to enforce the state court judgment.[7]Cicatello v. Brewery Workers Pension Fund, 434 F.Supp. 950 (W.D.N.Y.1977). This action was dismissed by the Court and that determination was affirmed by the Second Circuit. Cicatello v. Brewery Workers Pension Fund, 578 F.2d 1366 (2d Cir.1978). A related action was brought in the District of Columbia, where the District Court granted summary judgment against the Teamsters Fund. New York State Teamsters Conference Pension and Retirement Fund v. Pension Benefit Guaranty Corp., BNA Pen.Rep. No. 513, D-5 (D.D.C.1977).
On September 19, 1977 and on October 19, 1978 the Teamsters Fund was held in contempt by the New York Supreme Court, Queens County, for failure to comply with the Order and Supplemental Judgment entered on April 12, 1977.[8] Although no appeal was taken from these orders, the Teamsters Fund moved in January, 1980 to vacate the 1975 judgment and the April 12, 1977 Order and Supplemental Judgment. These motions were denied by the Queens County Supreme Court and the Court's orders denying the motions to vacate and imposing further contempt sanctions were unanimously affirmed, without written opinion, by the Appellate Division, Second Department, on March 23, 1981. The Teamsters Fund's motions for leave to appeal were denied by the Appellate Division on May 4, 1981 and dismissed by the Court of Appeals by order dated July 7, 1981.
Allegedly in response to this series of seemingly vexatious proceedings, the Brewery Fund commenced an action in the United States District Court for the Eastern District of New York against the Teamsters Fund, its trustees and administrators, Brewery Delivery Employees Local Union No. 46, IBT, v. Mosley, 80-1476 (H.B.) (E.D. N.Y.),[9] seeking declaratory relief and an injunction preventing the Teamsters from further litigating the merger issue, as well as damages and assessment of statutory penalties under ERISA based upon the Teamsters Fund's breach of fiduciary duty and upon violations of certain provisions of ERISA, the LMRA and the common law. *525 That action is, as of the date of this opinion, still pending.

III
In the action at bar, plaintiff Teamsters Fund alleges that illegal pension contributions were made by PepsiCo, Schaefer and other employers before the merger, on behalf of officers of participating brewery workers unions, in violation of § 302 of the Labor Management Relations Act. Plaintiff seeks the return of all pension payments made to defendant Hoh, a trustee of the Brewery Fund, who retired on November 16, 1976 and has been receiving pension payments since January 1, 1977. Plaintiff further seeks to obtain a judgment declaring retroactively that other union officers are not entitled to any of the pension credits that have accrued to them as a result of the payments allegedly made on their behalf by brewery employers. This Court will address each of plaintiff's claims seriatim.

PEPSICO, INC.
Plaintiff alleges that PepsiCo, Inc., through its wholly owned subsidiary, Rheingold Brewing Co., contributed to the Brewery Plan on behalf of defendants Accetta, Carroll, Greenhut and Hoh, who were either trustees of the Fund or union officials, in violation of § 302 of the LMRA's prohibition against an employer providing payments to an employee benefit fund for an employee representative without a written agreement specifying the basis for such payments. Moreover, plaintiff maintains that these defendants were full time union employees, not Rheingold employees, and that the payments made by PepsiCo could not constitute payments made for the purpose of providing benefits for Rheingold employeespayments which are permissible under § 302. It is uncontroverted that PepsiCo divested itself of its Rheingold holdings in March of 1974.
Assuming arguendo the validity of plaintiff's contentions and legal arguments, the claim against PepsiCo is without merit. Generally, absent fraud or bad faith, a corporation will not be held liable for the acts of its wholly owned subsidiaries or other affiliates. See, e.g., Crown Central Petroleum Corp. v. Cosmopolitan Shipping Co., Inc., 602 F.2d 474 (2d Cir.1979); United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO v. Great American Industries, Inc., 479 F.Supp. 216, 242 (S.D.N.Y.1979). There is then, as PepsiCo correctly asserts, a "presumption of separateness." To overcome this presumption, plaintiffs must show that the parent is the alter ego of the subsidiary and that the subsidiary is the "mere instrumentality of the parent." Fidenas A.G. v. Honeywell, Inc., 501 F.Supp. 1029, 1036 (S.D.N.Y.1980). Moreover, to "pierce the veil" of a corporation, plaintiff must prove by a preponderance of the evidence that, through its domination and control of the subsidiary, the parent is perpetrating a fraud, see, e.g., United Rubber, supra, 479 F.Supp. at 242, and must demonstrate that the parent's control of the subsidiary was the proximate cause of the injury complained of, In re Ira Haupt & Co., 304 F.Supp. 917, 926 (S.D.N.Y. 1969). Indeed, a bald allegation that a corporation "exerts influence and control" over the corporate decisions of its wholly owned subsidiary is not sufficient to sustain a claim against the parent corporation. Posner v. Merrill, Lynch, Pierce, Fenner & Smith, 469 F.Supp. 972, 985 (S.D.N.Y.1979). In other words, for a viable claim to exist, sufficient allegations of fraud must be present to justify piercing the corporate veil. See, e.g., Marine Midland Bank v. Miller, 512 F.Supp. 602 (S.D.N.Y.1981).
Here the complaint is insufficient to state a claim against PepsiCo. Plaintiff's presentation of affidavits made in opposition to the PepsiCo takeover of Rheingold in 1972,[10] affidavits which demonstrate that PepsiCo wished to take active management *526 and control of the Rheingold operation, does not serve to cure the defect in plaintiff's pleadings. "Control" of a subsidiary in itself, absent a showing of an intent to defraud a third party or to avoid liability, is insufficient to overcome the presumption of corporate separateness. See In re Mid-Atlantic Toyota Antitrust Litigation, 525 F.Supp. 1265, 1275 (D.Md.1981).
In addition, this Court agrees with PepsiCo that, even if "corporate accountability" is found, the claim against it is time-barred. The original action was commenced on September 25, 1981 in the Supreme Court, County of Oneida and removed by defendant Hoh to this Court on October 27, 1981. As stated, PepsiCo divested itself of its Rheingold assets in March, 1974. The Labor Management Relations Act itself does not contain a specific statute of limitations. Therefore, this Court must apply the relevant statute of limitations of the forum state. United Parcel Service v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). Here it is not clear whether a three or six year limitation period is applicable.[11] However, this Court does not have to reach this issue since plaintiff's claim is untimely in either event.
Plaintiff argues, however, that the limitations period did not begin to run until plaintiff had an opportunity to be aware that a claim actually existed. In other words, plaintiff claims that the period began when it learned of "the conduct complained of in the complaint herein ... [in] the spring of 1979."[12] (Affidavit of Peter P. Paravati in Opposition to Motion of PepsiCo to Dismiss, ¶ 15).
The law in this Circuit is clearabsent a showing of fraudulent concealment of the claim, a plaintiff's lack of knowledge of that claim or of all the facts does not toll the limitations period. Indeed, once it appears that, as here, the limitations period has run, "the plaintiff must sustain the burden of showing not merely that he failed to discover his cause of action prior to the running of the statute of limitations, but also that he exercised due diligence and that some affirmative act of fraudulent concealment frustrated discovery notwithstanding such diligence." City of Detroit v. Grinnell Corporation, 495 F.2d 448, 461 (2d Cir.1974); Kohlasch v. New York State Thruway Authority, 516 F.Supp. 769, 776 (S.D.N.Y.1981).
Nowhere here does plaintiff allege that its ignorance of the facts resulted from any fraudulent concealment by PepsiCo. In fact it is quite clear to this Court that any delay in discovering the disputed "conduit" procedure, or in discovering any other alleged illegalities, was due to the Teamsters Fund's dilatory litigation tactic of seeking to adjudicate the legality of the merger in as many forums as possible. Indeed, it was only after plaintiff was cited for contempt that it took possession of the Brewery Fund recordsand that was at the end of 1977. The more than four years that elapsed between that date and the date this action was commenced is, in any event, an impermissible delay and bars plaintiff from asserting its claim against PepsiCo. Dalsis v. Hills, 424 F.Supp. 784 (W.D.N.Y.1976).[13]

*527 F & M SCHAEFER BREWING CO.
The Teamsters Fund's claim against Schaefer, as the claim against PepsiCo, is based on the allegation that illegal pension contributions were made by Schaefer on behalf of officers of the participating brewery workers unions, in violation of § 302. Generally, § 302 of the LMRA, 29 U.S.C. § 186, makes it unlawful for an employer, or an association of employers, to pay, lend, or deliver, or agree to pay, lend or deliver, any money or other thing of value (1) to any representative of any of its employees who are employed in an industry affecting commerce; or (2) to any labor organization, or any officer or employee thereof, which represented, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or (3) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization. Certain payments are excepted from the proscription of 29 U.S.C. § 186 including, inter alia, payments to employees for services as employees; payments in satisfaction of a judgment or arbitration award, or in settlement of a claim; checkoffs; and payments to certain trust funds, in which case there must be a writing evidencing such payments. 29 U.S.C. § 186(c).[14]
The purposes of the statute have been clearly recognized by the Supreme Court in Arroyo v. United States, 359 U.S. 419, 425-426, 79 S.Ct. 864, 868-69, 3 L.Ed.2d 915 (1959):
The provision [§ 302] was enacted as part of a comprehensive revision of federal labor policy in the light of experience acquired during the years following passage of the Wagner Act ..., and was aimed at practices which Congress considered inimical to the integrity of the collective bargaining process.... Those members of Congress who supported the amendment were concerned with corruption of collective bargaining through bribery of employee representatives by employers, with extortion by employee representatives, and with the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control....
Congress believed that if welfare funds were established which did not define with specificity the benefits payable thereunder, a substantial danger existed that such funds might be employed to perpetuate control of union officers, for political purposes, or even for personal gain.... To remove these dangers, specific standards were established to assure that welfare funds would be established only for purposes which Congress considered proper and expended only for the purposes for which they were established. [footnotes omitted].
Cited in Blassie v. Kroger Co., 345 F.2d 58, 67 (8th Cir.1965). See also Zenter v. American Federation of Musicians, 237 F.Supp. 457 (S.D.N.Y.1965), aff'd, 343 F.2d 758 (2d Cir.1965). Lugo v. Employees Retirement Fund of Illumination Products, 388 F.Supp. 997 (E.D.N.Y.1975), aff'd, 529 F.2d 251 (2d Cir.1976), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976).
Consistent with these objectives, the requirement that contributions to a pension fund be made under a "written agreement with the employer", 29 U.S.C. § 186(c)(5)(B), has been construed to apply only to those employers who are subject to collective bargaining with their employees. It does not extend to contributions made by a union on behalf of its participating union officers or employees. As succinctly stated by then Circuit Judge Blackmun in Blassie v. Kroger Co., supra, 345 F.2d at 72:

*528 [W]e find nothing of substance in the suggestion that employees of the Trust cannot be beneficiaries because there is no written agreement applicable to them, of the kind required by § 302(c)(5)(B). This requirement, when viewed in the light of the statute's purpose, impresses us ... as having application only to those employers subject to collective bargaining procedure with the union.
Thus, even though the written trust agreement in Blassie was silent as to the status of union officers, 345 F.2d at 73, the court nevertheless held that § 302 had not been violated by payments by the union on behalf of its officers. See also Moglia v. Geoghegan, 403 F.2d 110, 115 n. 2 (2d Cir. 1968).
The documentary evidence presented here clearly reveals that it was the local unions who were contributing proceeds to the Brewery Fund and it was these funds that the trustees paid, or gave credit for, to the union officials as beneficiaries of the plan. (Affidavit of Thomas Donahue, ¶¶ 4-6; Affidavit of John Hoh, ¶¶ 8-10; Affidavit of Kenneth Carroll, ¶¶ 3-6; and accompanying exhibits). It is also clear that the role of the employers was limited to that of a "conduit", i.e., transferring funds from the local brewery unions to the trustees of the Brewery Fund. Id. Plaintiff has provided not a scintilla of evidence to support its allegation that the employers gave "something of value" to union officials or impermissibly interfered with employee representatives within the meaning of § 302. Fed.R.Civ.P. 56(e). Nifty Food Corp. v. The Great Atlantic & Pacific Tea Co., Inc., 614 F.2d 832, 839 (2d Cir.1980).[15]
Finally, as Schaefer notes, this Court is limited by § 302(e), 29 U.S.C. § 186(e), to the prevention of prospective violations.[16] Indeed, conduct constituting no more than a simple breach of fiduciary duty does not come within the prohibition of the Act per se. Haley v. Palatnik, 509 F.2d 1038, 1040 (2d Cir.1975). Therefore, since § 302(e) relief is jurisdictional and extends only to restraining future violations of § 302, Employing Plasterers' Ass'n. v. Journeymen Plasterers' Protective & Benevolent Society, 279 F.2d 92, 97 (7th Cir. 1960), this Court is prohibited by Congress from granting restitution to plaintiff even if plaintiff's claims are valid. See Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1259 (5th Cir.1980).

JOHN HOH, ENEA BORRA, GEORGE PHLEIDERER, GEORGE WALSH, EDWARD SIEGMANN, VALENTINE FRANK, FRANK FINK, DOMINICK ACCETTA, KENNETH CARROLL, DANIEL GREENHUT
All of the above individual defendants were or are officers of the local brewery union or trustees of Brewery Fund and are alleged to have either paid or received pension benefits, in violation of § 302. Plaintiff contends that the payments were made by the employers absent a written trust agreement providing for such payments and that these defendants were union, not brewery, employees. For the reasons stated above, this Court finds these contentions untenable.

JEROME TIERMAN
Defendant Tierman was a trustee of the Brewery Fund who resigned as trustee effective *529 March 31, 1974. Consequently, for the reasons that apply to PepsiCo,[17] the complaint against Tierman is untimely.

IV

COUNTERCLAIMS
The counterclaims here, made on behalf of a purported class, allege violations of ERISA, 29 U.S.C. §§ 1104, 1053, 1133. This Court notes that the issues herein are virtually identical to the pending class action in the United States District Court for the Eastern District of New York. Brewery Delivery Employees Local Union No. 46, IBT v. Mosley, 80-1476 (H.B.) (E.D.N.Y.). Therefore, in the interest of judicial economy, to avoid duplication of effort by the parties, and since the Eastern District action is now at a more advanced stage than this case, this Court will exercise its discretion to stay proceedings on the instant counterclaims pending a determination in the Eastern District case. Kerotest MFG. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Private Medical Care Foundation, Inc. v. Califano, 451 F.Supp. 450 (W.D.Okla.1977). See generally Wright, Miller & Cooper, 17 Federal Practice and Procedure § 4247 n. 7 (and cases cited therein).

V

CONCLUSION
Accordingly, the motions by defendants PepsiCo, Inc. and Jerome Tierman to dismiss the complaint are granted. Fed.R. Civ.P. 12(b)(6). The motions by defendants F & M Schaefer Brewing Co., Hoh, Borra, Pfleiderer, Walsh, Siegmann, Frank, Fink, Accetta, Carroll and Greenhut for summary judgment are granted. Fed.R.Civ.P. 56(c). The motions for summary judgment on the counterclaims are stayed pending resolution of Brewery Delivery Employees Local Union No. 46, IBT v. Mosley, 80-1476 (H.B.) (E.D.N.Y.).
It is so Ordered.
NOTES
[1] 29 U.S.C. § 186(e) provides in part: "The district courts of the United States ... shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violation of this section..."
[2] 29 U.S.C. § 186, restrictions on financial transactions, provides in part:

(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value
(1) to any representative of any of his employees who are employed in an industry affecting commerce; or
(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or
(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or
(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.
(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.
29 U.S.C. § 186(c) details exceptions to § 186(a) and (b):
(c) The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress; (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and the employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon ...
[3] The Collective Bargaining Agreement, p. 24, states in pertinent part:

Employees elected to office in the union shall be considered on leave of absence. Employees designated to perform official duties with the union other than elective office shall after reasonable notice to the employer be granted leave of absence for a period of such service but not exceeding three months subject to renewal. Seniority shall accumulate during the period of absence above mentioned.
[4] The Brewery Workers Pension Fund Plan, ¶ 3, p. 5 provides:

In any case of a member on leave of absence from the service of his Participating Company because of business of the Union, membership shall be continued provided contributions at the weekly rate currently in effect for members and the Participating Company are made to his account in a manner acceptable to the Board, and in such event $.25 of each such weekly contribution so made for the member shall be recorded as a contribution of the member.
[5] Plaintiff contends that upon the closing of certain Rheingold and Schaefer plants in 1974 the "Brewery plan was no longer financially able to stay in existence and would be a drain upon the employers and members of the plaintiff Fund." (Affidavit of Peter P. Paravati in opposition to Motion of Hoh, et al., ¶ 24).
[6] The Appellate Division held that all of the issues raised by the Teamsters Fund were barred by the doctrines of res judicata or collateral estoppel. The Teamsters Fund's motion for leave to appeal was dismissed by the Court of Appeals on July 13, 1978.
[7] The plaintiffs here were certain named employees and pensioners who were then participants in the Teamsters Fund.
[8] In response, and as a result of these court orders, the plaintiff Fund took possession of the records and assets of the Brewery Workers Fund on December 1, 1977.
[9] Plaintiff Fund maintains that all of the above proceedings were brought by them "to avoid the merger as part of the fiduciary obligation of the plaintiffs' trustees to protect the assets of their Fund for the benefit of the members of that Fund" since the Brewery Fund "would be a [financial] drain upon the employers and members of the plaintiff Fund." (Affidavit of Peter P. Paravati in Opposition to Motion of Hoh, et al., ¶ 24). The predicate of these actions, according to plaintiff, was defendants' misrepresentations of the Brewery Fund's financial soundness.
[10] See Affidavit of Peter P. Paravati in Opposition to Motion of PepsiCo to dismiss. This affidavit refers to affidavits by certain PepsiCo corporate executives made in opposition to the FTC's application for an injunction preventing PepsiCo from exercising control over Rheingold. The application was made to the Second Circuit.
[11] The applicable limitations period is either N.Y.Civ.Prac.Law and Rules § 213, which contains a six year period for an action based upon a breach of a contractual obligation or where there has been a breach of a fiduciary duty by a trustee, Valle v. Joint Plumbing Industry Bd., 623 F.2d 196, 202 n. 10 (2d Cir.1980), or N.Y. Civ.Prac.Law and Rules § 214, which provides a three year limitations period for an action based upon a violation of a right created by a statute, see, e.g., European American Bank v. Cain, 79 A.D.2d 158, 436 N.Y.S.2d 318 (2d Dep't 1981).
[12] Plaintiff requested the trustees of the Brewery Fund to change the disputed employer "conduit" procedure in October, 1979. Plaintiff claims it was only after the changeover to the procedure whereby the brewery locals directly transmitted collected pension funds to the Teamsters Fund that plaintiff learned that the former procedure had occurred and was unlawful.
[13] The defense of laches is bottomed on the principle that equity aids the vigilant, not those [who] sleep on their rights.... Three independent criteria must be satisfied before laches can be found. Defendants must show that plaintiffs delayed in asserting their rights or claims, that such delay was not excusable and that there resultantly was undue prejudice to the defendants.

Dalis v. Hills, supra, 424 F.Supp. at 78. See, e.g., Feldman v. Trans-East Air, Inc., 366 F.Supp. 66 (E.D.N.Y.1973), aff'd, 497 F.2d 352 (2d Cir.1974).
[14] See n. 2 supra.
[15] Moreover, plaintiff's contention that defendant Hoh and other named individual defendants were not "employees" of a brewery since they were full time union officials, and therefore not entitled to pension credits or benefits, is wholly without merit. First, elected union officials were considered brewery employees on a leave of absence, see n. 3 & 4 supra, (Hoh and the individual defendants fit into this category); see Moglia v. Geoghegan, supra, 403 F.2d at 116 (only employees and former employees may qualify as beneficiaries of a trust. Since the individual defendants here were at least former employees, it is irrelevant whether they were then current brewery employees); see also United States Trucking Corp. v. Strong, 359 F.2d 392 (2d Cir.1966); second, as Blassie points out, it is not unlawful under § 302 for the Trust to pay benefits to employees of the trust and union officials, especially when there is a writing setting forth the basis for such payments, see n. 4 supra.
[16] See n. 1 supra.
[17] See n. 10-13 and accompanying text supra.