**TRAILWAYS LINES, INC., Appellee,**

v.

**TRAILWAYS, INC. JOINT COUNCIL OF the AMALGAMATED TRANSIT UNION, AFL–CIO, CLC, Appellant.**

**No. 85–1156.**

United States Court of Appeals, Third Circuit.

Argued Oct. 21, 1985.

Decided March 6, 1986.

As Amended March 26, 1986.

Rehearing and Rehearing En Banc Denied April 14, 1986.

John H. Leddy (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellee.

Jeffrey Freund (argued), Robert M. Weinberg, Bredhoff & Kaiser, Washington, D.C., for appellant.

Before GARTH, BECKER, and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

### I.

Plaintiff-appellee, Trailways Lines, Inc. ("Trailways") brought this action against defendant-appellant Trailways, Inc., Joint Council of the Amalgamated Transit Union, AFL–CIO, CLC ("Union"), seeking a declaratory judgment that section 120(i) of the parties' collective bargaining agreement was in violation of the Labor Management Relations Act. Section 120(i) required Trailways to make contributions to a joint union-management pension trust fund on behalf of employees who take leaves of absence to accept full-time positions with the Union or its parent International. Trailways contends that provision violates § 302(a) of the Labor Management Relations Act, 29 U.S.C. § 186(a), and relieves

Trailways of the obligation imposed by the collective bargaining agreement.

The Union filed a counterclaim seeking declaratory and injunctive relief requiring Trailways to make pension fund contributions pursuant to section 120(i) of the agreement and directing Trailways to pay all past due contributions plus interest. Both parties filed cross motions for summary judgment and, on February 13, 1985, the district court granted Trailways' motion and denied the Union's motion. For the reasons set forth below, we affirm.

## II.

In 1983, Trailways and the Union entered into a nationwide collective bargaining agreement. Pursuant to that agreement, Trailways employees were permitted to take leaves of absence to accept full-time positions with the Union while at the same time accumulating seniority and retaining the right to return to active employment with Trailways following Union service. That agreement further required Trailways to make insurance and pension trust fund contributions on behalf of those employees during their leaves of absence to enter full-time Union service.[1] The Pension Trust Fund, administered jointly by Union and Trailways trustees, was designed to provide pensions for Trailways' employees and their families.

Five Trailways' employees took indefinite leaves of absence to hold full-time union positions during the period relevant to this action. Accordingly, their seniority and re-turn rights and pension trust fund payments were governed by section 120 of the Collective Bargaining Agreement. From April 1983 until January 1984, Trailways made the required pension trust fund payments on behalf of these five employees. However, in January 1984, Trailways unilaterally stopped making such payments, and, as of the date of the filing of this action, owed the following sums to the Trust Fund pursuant to the Agreement:

| | |
|---|---|
| Frank DeWolfe | $1,002.00 |
| Burl B. Scarborough | 1,076.00 |
| George R. Olson | 968.00 |
| R.B. Patterson | 818.00 |
| Edward W. Erkel | 1,188.00 |

## III.

Section 302(a) of the Labor Management Relations Act, 29 U.S.C. § 186(a) provides in pertinent part:

It shall be unlawful for any employer ... to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in any industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce ...

There is no dispute that Trailways' payments to the Pension Trust Fund would be

---

1. Specifically, the pertinent parts of the collective bargaining agreement provided:

SECTION 120. LEAVES OF ABSENCE—(a) Any employee, upon application in writing, may be granted a leave of absence, without pay.

\* \* \* \* \* \*

(a) The Company agrees that an employee who accepts a position in the service of the Union, or the parent Union shall be granted a written leave of absence and shall retain and accumulate their seniority while in such service, provided that such employees desiring to be reinstated must apply to the Company within thirty (30) days from the date of their retirement from such service.

\* \* \* \* \* \*

(d) Employees returning from leave of absence shall return to the original assignment at time of leave, except in cases where vacancies, new positions, or changes have been made during the period of their absence, in which event such employee shall be allowed to exercise their seniority in displacing junior employees on such vacancies, new positions or changes.

\* \* \* \* \* \*

(i) *Employees accepting positions with the Union, or parent Union, shall be eligible for Group Insurance and Pension Plan, as provided other employees, and the Company shall make their required contribution on such employees' behalf.* (emphasis added)

prohibited by § 302(a) unless they fall within one of the express statutory exemptions provided by § 302(c), which is set out below. Payments to trustees administering a pension trust are payments to an "employee representative," and payments on behalf of the five union officials constitute "a thing of value" made to union officers.

■ The Union argues, however, that such payments are permitted by the exceptions established by §§ 302(c)(1) and 302(c)(5).[2] Section 302(c)(1) exempts the payment of:

> money or other thing of value by an employer to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer.

Section 302(c)(5) exempts the payment of:

> money ... to a [pension] trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer ...

The district court held that the issue of whether Trailways' payments to the Pension Fund were excepted by § 302(c)(5) (and, presumably, by § 302(c)(1), as well) depends solely on "whether these union officials retain their status as Trailways' employees while on their leaves." *Trailways Lines, Inc. v. Trailways, Inc. Joint Council of the Amalgamated Transit Union, AFL–CIO*, No. 84–4703, slip op. at 3 (E.D.Pa. Feb. 13, 1985). The district court concluded that the five union officials on indefinite leave were solely employees of the Union and thus fell without the § 302(c) exceptions. The Union, on the other hand, argues that the district court's analysis was faulty for three reasons: (1) the five

union officials retained their status as Trailways' employees or former employees while on leave; (2) even if the employees were not Trailways' employees while on leave, the issue of whether the § 302(c)(1) or (c)(5) exemptions applies does not depend on whether the union officials are or are not *present* employees of Trailways; and, (3) the legislative history and policy behind § 302 support the Union's contention that such payments were not intended to be proscribed by § 302.

■ For the reasons discussed below, we hold that the payments required by the collective bargaining agreement do not fall within any of the § 302(c) exceptions, and thus are prohibited by § 302(a) of the LMRA.

## A.

Dealing first with the Union's second argument, the plain language of the Act, as construed by the courts, supports the district court's finding that the status of the five individuals while on leave as either employees of Trailways or the Union is dispositive of this case. The cases clearly hold that the Act permits payments to trust funds by employers only if they are made on behalf of *present* employees of the employer. As then Judge Blackmun stated in *Blassie v. Kroger Co.*, 345 F.2d 58, 68–69 (8th Cir.1965):

> The section [302(c)(5)] also requires that there be payment [to a trust fund] effected during an employee's *active* employment.... An employee ordinarily is a person presently engaged in employment. He is "One employed by another; one who works for wages or salary in the service of an employer...."

**2.** The Union did not raise § 302(c)(1) as an exception to § 302(a) before the district court. Ordinarily an appeals court will not consider issues not raised in the court below. *Rhoads v. Ford Motor Co.*, 514 F.2d 931, 933–34 (3d Cir. 1975); *Cady v. Twin Rivers Towing Co.*, 486 F.2d 1335, 1337 (3d Cir.1973); *Bogacki v. American Machine & Foundry Co.*, 417 F.2d 400, 407 (3d Cir.1969); *O'Neill v. United States*, 411 F.2d 139, 143 (3d Cir.1969). This rule, however, is subject to exception when the interests of fundamental justice will be served. *O'Neill*, 411 F.2d at 143–44; *Hormel v. Helvering*, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). Where, as here, we are faced purely with a related question of law involving statutory construction not requiring any additional fact finding by the district court, and where the failure to consider this issue will only result in needless uncertainty bound to result in future litigation, we will review the Union's § 302(c)(1) argument in the interests of justice. *See* 28 U.S.C. § 2106.

However, the presence of these two requirements—payment by the employer and *current* employment—does not mean that benefits which flow from these contributions of the employer (and from any other receipts of the Trust) are to be confined in their enjoyment to the period of the employee's active employment. (Emphasis added) (Citations omitted)

From the above, it is plain that employer's payments to a pension trust fund must be on behalf of "current" and "active" employees of the employer.[3]

The Union argues that payments on behalf of individuals "who are *at some time* employees of the employer" are permissible under the § 302(c) exceptions. Decisional law does not support this contention. In *Walsh v. Schlecht*, 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977), in holding that payments by an employer on behalf, or for the benefit, of employees of a subcontractor who was not a signatory to the collective bargaining agreement would violate § 302(a)(1), the Supreme Court stated that only payments made solely for the benefit of *actual* employees of the signatory employers are permissible under § 302(c)(5). 429 U.S. at 407, 409, 97 S.Ct. at 684, 685.[4]

Similarly, the Sixth Circuit in *Reinforcing Iron Workers Local Union 426 v. Bechtel Power Corp.*, 634 F.2d 258, 261 (6th Cir.1981), held that payments made by an employer to a fund established by a collective bargaining agreement to compensate a full-time steward hired by the union to investigate the employer's compliance with that agreement violated § 302(a) since the "steward cannot be characterized as an employee of Bechtel."

The Union contends that *Reinforcing Iron Workers* and *Walsh* are distinguishable from the case at bar since in those cases the individuals for whom the disputed payments were made were *never* employees of the employer, whereas here the individuals on leave are *former* and *possible future* employees of Trailways. This distinction, however, is not relevant. In both *Reinforcing Iron Workers* and *Walsh*, it is clear that the determinative factor was that the employees involved—the union steward in *Iron Workers* and the subcontractor's employees in *Walsh*—were not, nor could they be considered—*current* employees of the employer. Neither court stated that had the disputed individuals been either *former* or *future* employees of the employer the outcome would have been different. Neither case dispels the *Blassie* requirement of current employment to qualify for the § 302(c)(5) exemption. *See also Todd v. Benal Concrete Construction Co.*, 710 F.2d 581 (9th Cir.1983) (§ 302(c)(5) permitted contributions only on behalf of a contractor's *own* employees, not for the benefit of employees of independent contractor).

### B.

The Union also argues that § 302(c)(1) does not require that individuals for whom pension fund payments are made be current employees of the employer. According to that section, payments to "former" employees are permissible so long as they are in "compensation for, or by reason of, his service as an employee of such employer." To the Union, the pension fund contributions made on behalf of former employees currently on leave to serve as union officials were earned solely "by reason" of their past service to Trailways. But for their past employment by Trailways, the Union contends, these officials would not be eligible for pension fund contributions; therefore, these payments are "by reason of their service as an employee of" Trailways.

---

**3.** As *Blassie* also makes clear, the *benefits* payable from such a trust fund may be made to individuals, including union officials, who are *not* current employees of the employer. *Id.* at 68, 73. This is self-evident, since by definition pension benefits will be paid to retired former employees no longer employed by the employer.

**4.** The Court did hold that payments "measured" by the hours worked by the subcontractor's employees but whose benefits are payable only to the actual employees of the general contractor are permissible. 429 U.S. at 407, 97 S.Ct. at 684.

A logical reading of the statute makes clear that the "payments to former employees' exemption" of § 302(c)(1) applies solely to payments made as "compensation or by reason of" the former employees *past* service to the employer. While the Union is correct in asserting that had these individuals never been Trailways' employees they would not be eligible for pension contributions made on their behalf, it does not therefore follow that the pension fund contributions made by Trailways pursuant to the collective bargaining agreement were made "in compensation for, or by reason of," their *former* service to Trailways so as to fall within the § 302(c)(1) exception. Clearly, the statute contemplates payments to former employees for *past* services actually rendered by those former employees *while they were employees of the company.* Just as clearly, however, the pension fund benefits paid on behalf of former employees serving as union officials while on leave from Trailways are not compensation for their past service to Trailways.[5]

Thus, the sole issue remaining is whether the § 302(c)(5) exemption, either by its express terms or by implication, renders § 302(a) inapplicable to these payments. This in turn depends on the status of the five union officials while on leave of absence.

### C.

By its terms, § 302(c)(5) exempts payments made to a pension trust fund "for the sole and exclusive benefit of the employees of such employer" from the § 302(a)(1) prohibition. The statute clearly states that such pension fund payments by an employer are permitted so long as they are made for the benefit of "employees of such employer." The district court correctly concluded, and it is undisputed on appeal, that the five employees here while on leave were "employees of the defendant union and representatives of the employees" of Trailways. *Trailways,* No. 84–4703, slip op. at 6. However, the precise issue before us is whether these persons, while undeniably union employees, may also be at the same time employees of Trailways for purposes of § 302(c)(5).[6]

The Union, pointing to arbitration decisions interpreting various collective bargaining agreements, argues that the question of the status of an individual as employee is purely a matter of contract. These decisions, the Union argues, make clear that an individual remains an employee of an employer so long as he "retains seniority and return rights" while absent from the employ of the employer, even if such individual is employed by another. Thus, the Union argues, an individual may properly be considered the employee of *both* the Union and Trailways while on leave of absence, thereby rendering payments made on behalf of these individuals permissible under § 302(c)(5) of the Act.

However, the issue of the status of employees is not solely a question of contract. Rather, it is a question of law turning also on the degree of control exercised by the employer over the employee, and on a determination of for whose benefit the employee is performing his services. See *Todd v. Benal Concrete Construction, Co.,* 710 F.2d 581, 584 (9th Cir.1983)

---

5. Pursuant to the collective bargaining agreement, the pension fund contributions made on behalf of former employees serving as full-time union officials are measured by their salaries received in their *current union positions,* thereby indicating that the pension fund contributions made on their behalf are geared to their *contemporaneous* services to the Union.

Since it is undisputed that the individuals involved perform *no present* services for Trailways for which they could be compensated while on leave to serve the Union, the § 302(c)(1) "payment to present employees" exemption likewise does not apply here. It is therefore evident that the contributions to the pension fund are not in compensation for, or by reason of, the employees' current service to Trailways. Thus § 302(c)(1) does not in any way exempt these payments from the § 302(a)(1) prohibition.

6. The district court concluded that these individuals "qualify as the representatives of the employees of the plaintiff *and are not themselves the employees of the plaintiff." Trailways,* No. 84–4703, slip op. at 6. (Emphasis added).

("[c]ontractual language alone cannot transform a contractor/independent contractor relationship into an employer/employee relationship.")[7] Under either of these tests, the individuals here cannot be considered Trailways' employees while on leave, since they are in no way controlled by Trailways, nor do they perform any services for the benefit of Trailways.

The Union points to no case supporting its position that a *full-time* union official on leave retains his status as an employee of his employer.[8] The fact that courts have held that direct payments made to company employees for time spent conducting union business during working hours pursuant to "no-docking" provisions contained in collective bargaining agreements do not violate § 302(a)(1), does not mean that payments made on behalf of *full time* union officials who perform no work for the employer do not violate the Act. *See, e.g., BASF Wyandotte Corp. v. Local 227, International Chemical Workers Union*, 591 F.Supp. 339 (N.D.N.Y.1984); *Employees' Independent Union v. Wyman Gordon Co.*, 314 F.Supp. 458 (N.D.Ill.1970).

There is a sound distinction between payments made to a union official who goes on *temporary* leave to conduct union business and then returns to *active* employment, and payments on behalf of union officials who are on *full-time* leave but who may *never* return to full-time employment of his employer. Thus, there is no basis in the case law for concluding that an individual may be considered an employee of both the Union and the employer for § 302(c)(5) purposes.[9]

This view furthers the public policy goals intended by Congress to be served by § 302. Section 302 was designed to prohibit payments from employers to unions and union officials to prevent bribery of employee representatives, extortion by employee representatives, and abuse of welfare funds by union officials when such funds were left solely to union control. *See Arroyo v. United States*, 359 U.S. 419, 425–26, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959).[10] As the Supreme Court stated in *Arroyo*, "To remove these dangers, specific standards were established to assure that

---

**7.** The definition of "employees" put forth in *Blassie* fully supports this position. There, in holding that § 302 prohibited payments to pension funds on behalf of employees who had already retired, the court defined an employee as "[o]rdinarily ... a person presently engaged in employment ..." or "one who works for wages or salary in the service of another". 345 F.2d at 68–69.

**8.** Arbitration decisions as to questions of law have no binding precedential value on this Court.

**9.** *New York State Teamsters Conference Pension and Retirement Fund v. Hoh*, 554 F.Supp. 519 (N.D.N.Y.1982) does not support the Union's position. It is true that the court there noted that:

plaintiff's contention that defendant Hoh and other named individual defendants were not "employees" of a brewery since they were full time union officials, and therefore not entitled to pension credits or benefits, is wholly without merit. First, elected union officials were considered brewery employees on a leave of absence, *see* n. 3 & 4 *supra*, (Hoh and the individual defendants fit into this category); *see Moglia v. Geoghegan, supra*, 403 F.2d [110] at 116 [ (2d Cir.1968) ] (only employees

and former employees may qualify as beneficiaries of a trust. Since the individual defendants here were at least former employees, it is irrelevant whether they were then current brewery employees); *see also United States Trucking Corp. v. Strong*, 359 F.2d 392 (2d Cir.1966); second, as *Blassie* points out, it is not unlawful under § 302 for the Trust to pay benefits to employees of the trust and union officials, especially when there is a writing setting forth the basis for such payments, *see* n. 4 *supra*.

554 F.Supp. at 528 n. 15.

However, in *Hoh* the court clearly based its ruling that § 302 was not violated on the fact that the pension fund payments made on behalf of the union officials on leave from the company were in fact made by the *union*, not the employer. Accordingly, the above language which seemingly argues for the union's position, is merely dicta.

**10.** Senator Ball, the sponsor of § 302 in the Senate, stated that

the sole purpose of the amendment is ... to make sure that [welfare funds] are legitimate trust funds, used actually for the specific benefits to the employees of the employers who contribute to them, and that they shall not degenerate into bribes. [II Legis.Hist. at 1305].

welfare funds would be established only for purposes which Congress considered proper and expended only for the purposes for which they were established." *Id.* at 426, 79 S.Ct. at 868.

■ Pension fund contributions made on behalf of Union officials on leave from Trailways are tantamount to direct compensation paid to its employees or payments made to the union. See *Knauss v. Gorman,* 583 F.2d 82, 89 (3d Cir.1978) (contributions to a welfare fund constitute payments in lieu of wages to the fund's beneficiaries). While payments made on behalf of Union officials who were once active employees of the employer but who may never return to his employ may not at first blush be the kinds of payments thought to lead to corruption of union officials, the potential for such corruption, or at least the appearance of it, nevertheless remains. The inherently adversarial relationship between employers and unions argues strongly against considering such individuals as being both employees of Trailways while at the same time they are serving as full-time union officials. *See General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 393–394, 102 S.Ct. 3141, 3151–3152, 73 L.Ed.2d 835 (1982).

Accordingly, we hold that since the former Trailways' employees who have taken leaves of absence to pursue full-time Union service may not be considered employees of Trailways while on such leave for purposes of § 302(c)(5), payments made on behalf of those employees to a pension trust fund violate § 302(a)(1) of the Labor Management Relations Act.[11]

11. Trailways also contends that the payment of pension contributions at issue here violates sections 8(a)(1) and (3) and section 8(b)1(A) and (2) of the LMRA, 29 U.S.C. §§ 158(a)(1) and (3); 29 U.S.C. §§ 158(b)(1)(A) and (2). According to Trailways, section 120(i) constitutes a preferential contractual provision which illegally discriminates in favor of the Union in violation of section 8(a)(3). The Union argues that these claims are in fact alleged unfair labor practices over which the National Labor Relations Board has exclusive jurisdiction.

## IV.

The February 13, 1985 order of the district court which: (1) declared section 120(i) of the parties' collective bargaining agreement unenforceable; (2) stayed the Union from taking action to require Trailways to make contributions; and, (3) which granted Trailway's motion for summary judgment, will be affirmed.

BECKER, Circuit Judge, dissenting.

I agree with the majority that employees on leave of absence are not present employees of Trailways and that the challenged contributions are therefore not permissible under § 302(c)(5). However, I disagree with the majority with respect to § 302(c)(1); I believe that that section exempts the contributions at issue from the prohibition of § 302(a) because they were made "as compensation for, or by reason of" the absent employees' services to Trailways while they were active employees. Accordingly, I respectfully dissent.

Section 302(a) of the Labor Management Relations Act, 29 U.S.C. § 186(a) provides in pertinent part:

It shall be unlawful for any employer ... to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in any industry affecting commerce; ...

As the majority correctly states, there is no dispute that Trailways' payments to the Pension Trust Fund are prohibited by § 302(a) unless they fall within one of the express statutory exemptions provided by § 302(c).[1] Section 302(c)(1) exempts the payment of:

Because we have disposed of this case on the § 302(c) issue, as did the district court, we need not reach or decide the merits of these contentions.

1. There is also no dispute that a contribution to a pension fund from which the persons on leave will eventually draw retirement benefits is a "thing of value" given to these persons by Trailways. *See Knauss v. Gorman,* 583 F.2d 82, 89 (3d Cir.1978) (contributions to a welfare fund

money or other thing of value payable by an employer to any officer or employee . . . of a labor organization, who is also an employee *or former employee* of such employer, as compensation for, or by reason of, his service as an employee of such employer. (Emphasis added)

Unlike § 302(c)(5), which refers to current employees only, § 302(c)(1) covers former employees of Trailways and thus applies to the plaintiffs in this case.[2] The central question, therefore, is whether the trust fund contributions are made "as compensation for, or by reason of," services rendered by the persons now on leave when they were employees of Trailways.[3]

The majority summarily rejects the argument that § 302(c)(1) is applicable:

Clearly, the statute contemplates payments to former employees for *past* services actually rendered by those former employees *while they were employees of the company*. Just as clearly, however, the pension fund benefits paid on behalf of former employees serving as union officials while on leave from Trailways are not compensation for their past service to Trailways. (Emphasis in original)

Maj.Op. at 106. I take issue with the majority because I believe that the contributions in question *are* compensation for services rendered to Trailways prior to the commencement of the leaves of absence.

The collective bargaining agreement contains the terms of workers' employment with Trailways; each of the benefits the workers receive under that collective bargaining agreement are part of the consideration for their services at Trailways. In addition to the standard terms for wages, overtime pay, and insurance, the collective bargaining agreement provides that per-

sons who take a leave of absence to work as union officials have a right to reinstatement at Trailways after their union service and retain their seniority during their absence. The collective bargaining agreement also provides that the employer will make payments into the union's pension fund while the employee is on leave. Although these contributions are made during the leaves of absence, the employer's promise to pay them is nonetheless a term of the collective bargaining agreement and therefore a part of the consideration for work performed as a Trailways employee. There is no reason for distinguishing the pension fund payments from any of the other terms of the collective bargaining agreement. Like wages, overtime, insurance, or accrued seniority, the pension fund payments are consideration for services rendered and, as such, are permissible under § 302(c)(1).

The majority ignores this point. Noting that the contributions are measured by the former employees' union salaries, the majority concludes that the pension fund contributions are "geared to their contemporaneous services for the Union." Maj.Op. at 106 n. 5. While the majority's observation is correct, it does not support the majority's conclusion. Contributions that are *geared* to contemporaneous union services are not necessarily paid *as compensation for* that union service. Obviously, Trailways needs a standard by which to measure seniority advances and pension contributions during employees' leaves of absence. The most reasonable standard is that provided by the terms of the absentees' employment by the Union. Just as seniority advances during leaves of ab-

---

constitute payments in lieu of wages to the fund's beneficiaries).

**2.** Section 302(c)(1) refers only generally to a "thing of value," while § 302(c)(5) specifically addresses payments to trust funds. However, there is nothing in the language of the statute to indicate that § 302(c)(5) is preemptive, that is, that payments to trust funds can be exempt only under § 302(c)(5).

**3.** I agree with the majority's conclusion that, although the Union did not raise the § 302(c)(1) argument in the district court, in the interests of justice we should review this argument because the statutory arguments are integrally related and because failure to consider the issue will result in unnecessary future litigation.

sence are measured by the amount of time that the persons spend on leave, pension contributions are measured by the amount of money that these persons earn during their leave.

This conclusion is supported by analogy to the decision in *Walsh v. Schlecht*, 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977), in which the Supreme Court upheld the legality under § 302(a)(1) of contributions *measured by* the hours worked by a subcontractor's employees that were nevertheless made *on behalf of* the contributor contractors own employees. In *Walsh*, the use of other employees' salaries as a yardstick for determining amount of contributions was permissible under § 302(c)(5). Similarly, the use of salaries earned *in another capacity*—as Union employees—as a standard of measurement for contributions made as compensation for work at Trailways should be permissible under § 302(c)(1).

To bolster its conclusion that the challenged contributions are impermissible, the majority argues that the policies underlying § 302—the prevention of the use of funds administered by unions as "war chests," and of bribery of union officials by employers, *see Arroyo v. United States*, 359 U.S. 419, 425–26, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959)—would be threatened by a decision upholding the contributions here. The majority also relies for its decision on the fact that courts have established a rule of strict compliance with the provisions of § 302. *See e.g., Arroyo*, 359 U.S. at 424, 79 S.Ct. at 867; *Costella v. Lipsitz*, 547 F.2d 1267, 1273 (5th Cir.1977); *Bricklayers, Masons and Plasterers International Union of America, Local Union No. 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1024 (5th Cir.1975). However, upholding the contributions in this case neither offends the policy of the act nor entails a waiver of strict compliance with the language of § 302.

Contributions made as compensation for services rendered to Trailways simply do not constitute bribery of the Union or any other kind of support of the Union by Trailways. The majority's position that the contributions "are tantamount to direct compensation paid to [the Union's] employees or payments to the Union" relies upon the premise that the contributions are made as compensation for service rendered to the Union, rather than service rendered to Trailways. For the reasons stated above, I disagree with this premise. For the same reasons, I believe that the contributions fall directly within the § 302(c)(1) exemption and that my position is therefore perfectly consistent with a strict construction of § 302.

The cases upholding the legality of "no-docking" provisions under § 302(c)(1) strongly support the conclusion that the payment of pension contributions in this case is legal. Under a "no-docking" provision, union officers are entitled to take time off from work, without loss of pay, to conduct union business. In upholding a "no-docking" provision under which the union officials were entitled to take four hours off from work on a given day, the court in *BASF Wyandotte Corp. v. Local 227, International Chemical Workers' Union*, 591 F.Supp. 339 (N.D.N.Y.1984), stated that such an agreement "is a cooperative effort representing the product of arms-length bargaining and does not present the type of opportunity for employer interference in union affairs which § 302 is designed to prevent." *Id.* at 342.[4] The same is true here, for the provisions of the collective bargaining agreement in this case, like the no-docking clause in *BSAF Wyandotte*, are simply bargained-for terms of the employees' employment with their companies.

**4.** *See also Employees' Independent Union v. Wyman Gordon Co.*, 314 F.Supp. 458 (N.D.Ill.1970); *United States v. Motzell*, 199 F.Supp. 192 (D.N.J. 1961). *Cf. Bur. of Al., Tob. and Fire. v. Fed. Lab. Rel. Auth.*, 464 U.S. 89, 104 S.Ct. 439, 449 n. 17, 78 L.Ed.2d 195 (1983) (stating in dictum that unions may negotiate for payment by employers of expenses and travel allowances for union negotiators).

Trailways and the majority attempt to distinguish the "no-docking" cases on the ground that the union officials were active employees who used only part of their day for union business. The distinction does not work, however. During the hours that these persons spent on union activities, they were not rendering services to their employer, and they were not under their employer's control. The distinction between using part of the day for union business and taking leaves of absence to become full-time union officials is only one of degree: the nature of the absences and the payments made by the employer during them (or measured by them) is the same.[5]

Consideration of the widespread business practices of companies and unions provides further reason to believe that the pension contributions at issue here are not illegal and that the dangers the majority alleges are more ficticious than real. It was conceded at oral argument that similar arrangements are common in collective bargaining agreements and have never before been challenged on the grounds relied upon by the majority. While this fact is certainly not dispositive of the legality of such schemes, it surely suggests that they are legal. This Court should be reluctant to overturn so widespread a practice, which represents a practical accommodation agreed upon by both businesses and unions.

It is also relevant that Trailways at no point suggested that it was coerced into making the contributions. It entered the agreement it now challenges with its eyes wide open. The collective bargaining agreement is thus undeniably the product of arms-length negotiation. We should endeavor to uphold such agreements, not to substitute for them others that we might prefer.

For the foregoing reasons, I would reverse the judgment of the district court.

---

5. If anything, the provision of the collective bargaining agreement in the instant case are even less threatening to the purpose of § 302(a) than are no-docking clauses. The motivation for bribery is arguably greater where the employee representative is at the workplace some of the time, hence more aware of and involved in the conditions of employment.